BOUCHER *v.* TREMBLEY.

1. Taxation—Tax Purchaser—Title—Period of Redemption.
   Title to property conveyed by tax deed by the State to a purchaser of the State bid is not absolute and does not vest until the expiration of the six months in which, under notice, the original owner can redeem. Act No. 229, Pub. Acts 1897.

2. Same — Conveyance by Original Owner — Merger of Tax Title.
   Where, during the period of redemption, the holder of a tax deed accepts quitclaim deeds from the owners of the original title, his tax lien merges in the record title and he takes the property subject to all the equities existing against the original title.

3. Ejectment—Claim for Improvements.
   Defendants in ejectment, who have not been in possession for six years nor occupied in good faith under color of title, cannot maintain a claim for improvements under section 10995, 3 Comp. Laws.

4. Same—Occupancy—Good Faith—Homestead—Tacking.
   Where defendant and her deceased husband in good faith claimed a strip of land adjoining their homestead entry, as a part of it, and placed their homestead buildings and improvements thereon, her possession after his death was not tacked to his but was a single occupancy entitling her to sustain a claim for the buildings and improvements under the statute on being defeated in ejectment.

5. Same—Judgment—Form.
   That a judgment in ejectment for defendant's improvements is in form in favor of all the defendants, when in fact only one of them has any claim, is not an error prejudicial to plaintiff.

Case made from Chippewa; Steere, J.   Submitted April 7, 1905.   (Docket No. 40.)   Decided June 6, 1905.

Ejectment by Carrie Boucher against Amille Trembley and others.   There was judgment for plaintiff with an allowance to defendants for improvements, and on plaintiff's exceptions a case was made for this court.   Affirmed.

*W. A. Coutts,* for appellant.

*Lanning & McMahon,* for appellees.

MCALVAY, J.  Plaintiff sued defendants in ejectment to recover possession of a certain fractional piece of land. Plaintiff claims title in fee and the right to possession of the land in dispute by virtue of a certain tax deed from the State to her grantor, Janie R. Macdonnell, dated July 27, 1903, and certain quitclaim deeds from all the heirs of the owner of the original title, made subsequent to the date of the tax deed.  Defendants by their plea gave notice of title by adverse possession, and also under the statute claimed compensation for improvements.  Defendant Amille Trembley is the widow of Pierre Trembley, deceased.  Defendant Romie Trembley is the son of the said deceased, and defendant Lizzie Trembley is the wife of Romie Trembley.  These defendants have no record title, and had not been in possession a sufficient length of time to claim ownership by adverse holding.  The case was tried by the court without a jury, who found the facts, making all files and exhibits in the case as part thereof.  The conclusions of law upon the findings of fact are as follows:

"The plaintiff has proved title in this case, and is entitled to recover.  Her tax title does not cut off defendants' claim for improvements.  Defendants have occupied the tract in question for more than six years, and in good faith increased its value by the improvements mentioned, so are entitled to compensation therefor under the provisions of our statute upon that subject.

"The clerk will enter a judgment in ejectment that the plaintiff recover the premises described in her declaration, and that defendants be allowed compensation for improvements in the sum of $775."

A judgment was thereafter entered in accordance with such findings.  Plaintiff proposed amendments to such findings of fact and conclusions of law, which were presented to the court and refused.  Plaintiff excepted to

such refusal, and has assigned error thereon and upon the findings of fact and conclusions of law of the court. The case is before this court upon a case made.

The principal error relied upon is that the court erred in holding that the plaintiff's tax title did not cut off defendants' right to claim for improvements under the statute. All deeds under which plaintiff claimed title were exhibits in the case, and made part of the findings of fact. They were, properly executed and acknowledged, and were received in evidence without objection. For the purposes of this case, the validity of the tax deed which plaintiff held is not questioned. The State tax deed was dated July 27, 1903, and was for taxes for the years 1886, 1887, and 1888, bid in by the State in May, 1902. The deeds from the owners of the original title were all made subsequent to the tax deed. Plaintiff's contention is that, in taking to herself these conveyances of the parties in interest in this land who were entitled to six months' notice under the tax law, she was simply doing that which the law provided she might do in order to entitle her to the possession of the land. Defendants contend that by such conveyance to her the tax title thereby merged into the original title and was wiped out, and that she stood in relation to these defendants the same as the original owners or parties in interest. The determination of this contention will depend entirely upon the construction which may be given to the tax law, relative to the title conveyed by the State to the purchaser under a tax deed, and when the title so acquired becomes absolute in such purchaser.

The provision of the tax law relative to the tax deed, and the title it gives a purchaser, is as follows (1 Comp. Laws, § 3895):

"On presentation of such certificate of sale to the auditor general or his deputy, after the expiration of the time provided by law for the redemption of land sold as aforesaid, the auditor general or his deputy shall execute and deliver to the purchaser, his heirs or assigns, a deed of the land therein described, unless the sale thereof shall have

been redeemed or annulled as by law provided, which deed shall be entitled to record in the office of the register of deeds of the proper county, in the same manner and with like effect as other deeds duly witnessed, acknowledged and certified. Such deeds shall convey an absolute title to the land sold, and be conclusive evidence of title, in fee, in the grantee, subject, however, to all taxes assessed and levied on such lands subsequent to the taxes for which the same was bid off."

And, relative to deeds for State bids (1 Comp. Laws, § 3907):

" Upon making payment as above such purchaser shall be entitled to and receive a certificate and a deed convey-ing all the right, title and interest of the State to such tax lands acquired or accrued by virtue of the original sale or sales to the State. All the provisions of law relative to deeds executed by the auditor general on the surrender of certificates of sale made by the several county treasurers shall be applicable in making deeds for such purchases."

The tax law has a further provision relative to notice to be given before any writ of assistance or other process for the possession of land the title to which has been obtained under and in pursuance of any tax sale: That such notice of six months, by personal or substituted service, must be given to the parties entitled thereto, designating them. The statute gives the form of notice necessary, which, among other things, states that the party has title to the land under tax deed issued therefor, and that such person is entitled to a reconveyance thereof, at any time within six months after service, upon the payment of the amount paid upon such purchase, together with 100 per cent., and all fees and costs, and $5 for each description. If the terms of this notice are complied with, a *reconveyance* must be made; or before such notice has been given, at any time after the deed has issued, the proper parties may make such payment, and thereby the tax title becomes void, and the owner of such tax title must *quitclaim* his interest.

There is one further statutory provision to be consid-ered. 1 Comp. Laws, § 3961, provides that:

"No purchaser under any tax sale hereafter made, or of any State tax land, or any State bid hereafter sold, shall enter into possession of the land so purchased until six months after he has given notice to the party or parties in interest, as provided for in the preceding sections, unless he shall have acquired from said parties their title thereto, under conveyance from said party or parties of his or their interest in said land."

This court, in *Adkin* v. *Pillen*, 136 Mich. 682, had these provisions of the tax law under consideration. The question as to who was the owner of certain real estate was the material question in that case. Plaintiff in that case had been prosecuted by defendant for malicious injury to a dwelling house, had been acquitted, and then brought this suit for malicious prosecution. The facts were that this plaintiff was the husband of the original owner of the property upon which defendant held a tax title under the present tax law. The statutory notice had been given to the owner. A few days before the expiration of the six months, plaintiff went upon the premises and removed the doors and windows from the dwelling house. Defendant made complaint, and plaintiff was arrested, tried, and acquitted. A judgment in this malicious prosecution case was obtained against defendant, who appealed to this court. The sole question before the court was as to his ownership of the property under the tax title. The court, after quoting 1 Comp. Laws, § 3895, hereinbefore quoted, said:

"Notwithstanding the fact that the State had acquired the absolute ownership of this land, and notwithstanding the language above quoted, the title acquired by defendant was, by Act No. 229 of the Public Acts of 1897, subject to redemption for a period of six months; and during this time defendant was not entitled to possession of the land."

The court said further:

"It is equally clear that we are bound to hold that, by Act No. 229 of the Public Acts of 1897, said title acquired under section 72 (Act No. 206, Public Acts 1893 [1 Comp. Laws, § 3895]) did not become absolute—and this is true

whether that title had or had not become absolute in the
State before sale—until the period for redemption had ex-
pired.   Until the expiration of this period, during which
the original owner has the sole right of possession and the
right to redeem from outstanding tax titles, such owner,
and not the owner of said tax titles, which may or may
not become absolute, is the owner of the property."

It has therefore been determined by this court that, not-
withstanding the language of the statute, the title to the
property conveyed by the State is not absolute, and does
not vest until the expiration of the time in which, under
notice, the original owner may redeem.   Under this de-
cision we cannot avoid the conclusion that a conveyance
from the original owner, who during this period of re-
demption is held to be the owner of the property, and who
is not, until due notice and the expiration of the time for
redemption, divested of his title, of necessity merges the
tax title into the original title so obtained.   Consequently
in this case the plaintiff took the title to the property in
dispute subject to the equity of these defendants to claim
for improvements, and the court did not err in holding
that such right was not cut off by plaintiff's tax title.

The court found that defendants had no record title, and
had not been in possession a sufficient length of time to
claim ownership under adverse holding.   The statute un-
der which defendants in ejectment may claim for build-
ings and improvements (3 Comp. Laws, § 10995) reads as
follows:

"Whenever in any action of ejectment the plaintiff
* * * shall recover * * * the defendant or defend-
ants shall be allowed compensation * * * for build-
ings and improvements on the premises recovered, erected
or made by him or them, by any person through whom he
or they claim title, to the extent that such buildings and
improvements shall increase the present value of said prem-
ises: *Provided,* The defendant or defendants, or the person
through whom he or they claim title, shall have been in the
actual, peaceable occupation of the premises recovered, for
six years before the commencement of the action; or, *Pro-
vided,* The same shall have been so occupied for a less

time than six years under a color of title and in good faith."

Defendant Romie Trembley had not been in the occupancy of the premises for six years, and was found by the court not to have occupied under color of title and in good faith.   Defendant Lizzie Trembley is his wife, living with him in a little house on these premises.   Her rights, therefore, in the premises, are no greater than her husband's, and neither, under the statute, can claim anything for improvements.   Defendant Amille Trembley is the widow of Pierre Trembley, who died April 9, 1901.   This suit was commenced in January, 1904.   Pierre Trembley made his homestead entry in December, 1889, and received his United States patent November 21, 1896.   The court found that in 1889 he, thinking this land was part of his homestead, took possession of it, and built a log house and barn upon it, and made the usual clearing; that his homestead entry joined this land.

"He and his family have lived upon this disputed strip, occupying it as a homestead, until his death in 1901, and the widow with some of her family has been there until the present time.   All Pierre Trembley's buildings and curtilege improvements are, and always have been, on this strip, and not on his homestead."

Defendant Amille Trembley occupied, with her husband, these premises as her homestead, and still continues such occupancy.   Had his title ripened, this would have become part of their homestead.   These improvements were made partly during his lifetime, but largely by the building of a good house since his death.   Her occupancy has been continuous, and of the same character as her husband's.   It has not been tacked onto his, but has been co-existent with it.   To determine that his death deprived her of all rights to make claim for these improvements constituting the homestead would be harsh and inequitable, and the claim is not supported by authority.

The further claim is made that the judgment allowing improvements to the defendants generally is not supported

by the facts found.   In form, the judgment allowing improvements is in favor of all the defendants.  This was error, but the error is not one upon which it is necessary or proper to reverse the case.   *Whitney* v. *Hyde,* 91 Mich. 13.   It is not prejudicial to the ·plaintiff.   The payment of the amount allowed would be. a complete protection to her.   We find no reversible error in the record.   The judgment is affirmed.

CARPENTER, GRANT, MONTGOMERY, and HOOKER. JJ., concurred.