GRIFFIN *v.* KENNEDY.

1. APPEAL AND ERROR — QUESTIONS CONSIDERED — PRESENTATION BY RECORD.

Errors not presented by the record are not available on error.

2. CONSTITUTIONAL LAW—DUE PROCESS — TAXATION — STATE TAX HOMESTEAD LANDS—DETERMINATION—VALIDITY OF STATUTE.

Section 127 of the general tax law (Act No. 206, Pub. Acts 1893), as amended by Act No. 107, Pub. Acts 1899, making it the duty of the auditor general and commissioner of the State land office to determine when State tax lands shall become State tax homestead lands, is not unconstitutional on the ground that the making of said determination is a judicial act which must be performed by a court, because, after the expiration of the period of redemption from a regularly conducted tax sale at which the State has purchased, the former owner has no rights to be affected by the determination, and the determination is a mere classification of State lands.

3. TAXATION — STATE TAX HOMESTEAD LANDS — EFFECT OF REDEMPTION STATUTE.

The title of the State to State tax lands is not impaired by Act No. 229, Pub. Acts 1897, superseded by Act No. 236, Pub. Acts 1903, giving landowners the right to redeem when the State has sold their lands as State tax lands under the general tax law.

4. CONSTITUTIONAL LAW— DUE PROCESS — STATE TAX HOMESTEAD LANDS—REQUIRING OWNER TO BRING SUIT.

Section 127 of the general tax law is not invalid because it provides that the determination therein specified shall be conclusive unless assailed by suit within six months, since the former owner of lands affected by the statute has no rights to protect.

5. SAME — DISCRIMINATION BETWEEN OWNERS SIMILARLY SITUATED.

That under section 127 of the tax law a landowner may, because his land is determined to be State tax homestead land, be deprived of acquiring the right to redeem which his neighbor, similarly situated, does acquire, does not render the statute unconstitutional.

OSTRANDER, J., dissenting.

Error to Bay; Shepard, J. Submitted October 19, 1906. (Docket No. 109.) Decided July 1, 1907.

Ejectment by Albert A. Griffin against Daniel J. Kennedy and others. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*T. E. Webster*, for appellants.

*Albert McClatchey*, for appellee.

Carpenter, J. This is an action of ejectment. Plaintiff's title is derived from a deed executed under the State tax homestead law. This deed was prima facie evidence of title (Act No. 211, Pub. Acts 1905), and there was no evidence of any irregularity in the proceedings leading to its execution. Defendant Kennedy was the former owner of the land. The other two defendants were tenants of defendant Kennedy. These tenants occupied the land at the time the auditor general and the commissioner of the State land office determined that it was homestead land. Verdict and judgment passed for plaintiff. We are asked to reverse that judgment

Appellants in their brief argue several questions not presented in the record. Such questions we cannot consider. Under the practice prevailing in this court, we reverse judgments of the circuit court only for the errors shown by the record and complained of in appellant's brief. In other words, the question of law upon which appellant relies must be presented in the record and argued in his brief. Under this rule, there is but one question in this case for our consideration, and that arises from the contention of defendants that section 127 of the general tax law (Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899), is unconstitutional. That section makes it the duty of the auditor general and commissioner of the State land office to determine when State tax lands shall become State tax homestead lands. Such

determination is conclusive unless assailed in the manner pointed out in the statute within six months. In making said determination, said officials must determine, and they are authorized to determine, whether or not the land is occupied; and in the case at bar they determined—and, defendants contend, erroneously determined—that it was unoccupied. We have heretofore decided that the decision of these officers "could not be overturned by a parol showing that it [the land] was not * * * abandoned." *Semer* v. *Auditor General*, 133 Mich. 569. But for the first time we are called upon to consider the claim that the statute is unconstitutional, upon the ground that the making of said determination is a judicial act which, under the Constitution of this State, must be performed by a court. This argument rests, and must rest, upon the assumption that the former landowner has some rights which are affected by the determination. This assumption is unfounded. The former landowner has no such rights, because before the determination all his rights had been acquired by the State. After the expiration of his right to redeem from a regularly conducted sale at which the State has purchased—and that is the case with the land in question—it (the State) owns and can dispose of the land as it pleases; and this is true, though the former owner of the land continues in possession, for he is in possession without the right of possession. The determination in question was therefore a mere classification of lands owned by the State. It was in no sense a judicial act.

In reaching the foregoing conclusion, we have considered and denied the proposition that the title of the State which would otherwise be absolute (see *Connecticut Mut. Life-Ins. Co.* v. *Wood*, 115 Mich. 444; *Hickey* v. *Rutledge*, 136 Mich. 128) is lessened or impaired by Act No. 229 of the Public Acts of 1897. This act, which is superseded by Act No. 236 of the Public Acts of 1903, gave owners the right of redemption when the State sells State tax lands under the general tax laws. It has been

urged that the legislature, by passing said Act No. 229, intended to convert the title of the State theretofore absolute into a lien analogous to that of a mortgage, and, consequently, to give the original owner of the land an equity of redemption of which he cannot be summarily deprived. I think it a conclusive answer to this argument to point out that at the time Act No. 229 of the Public Acts of 1897 was passed the act under consideration in this case, viz., the act providing for the sale of State tax lands for homesteads, was already upon the statute books. It is clear, and I think it will be conceded, that the legislature did not intend by enacting said Act No. 229 to affect the disposition of State tax lands under the State tax homestead law. At the time Act No. 229 took effect, the State tax lands were then of two classes: *First*, those which might be sold for homesteads under the State tax homestead law; *second*, those which might be sold to purchasers under the general tax laws. In enacting said law, the legislature did not intend that the land in the first class should be subject to redemption in the hands of a purchaser from the State, but it did intend that land in the second class should be subject to said redemption. Whether a particular description of land belonged to the one or the other of these two classes manifestly could not be determined prior to its sale or classification. Until sold under the general tax laws, any particular description of land might become tax homestead land. It follows, therefore, that the legislature did not intend to lessen the State's title in State tax lands generally. It intended merely to give owners the right to redeem after the State tax lands formerly owned by them were sold by the State to private purchasers under the general tax laws. We can and should give full effect to this intent without depriving the State of the right which the legislature clearly intended it should have of disposing of its land under the State tax homestead law, and also, I submit, of disposing of it in any other constitutional way the legislature might afterwards adopt.

It is undoubtedly true that said Act No. 229 has the effect of giving to the former owner of the State tax lands a title which formerly he did not possess. See *Adkin* v. *Pillen,* 136 Mich. 682. But this title does not come into existence until the sale described in said act has been made. That, it seems to me, was the legislative intent, and I see no difficulty in giving it effect. It may be said that a sale under the general tax laws transfers all the title of the State; part of the title so transferred passes to the purchaser, and part to the original owner of the land, his mortgagee or grantee. I shall not undertake to give a technical name to each of these different titles. We can give effect to the legislative intent without performing that undertaking.

Said section 127 provides that the determination heretofore mentioned shall be conclusive unless it is assailed by suit within six months. As applied to this case, this provision required the defendant in possession to commence suit against an adverse title. This circumstance does not, in my judgment, render the provision unconstitutional under the principle recognized and applied in *O'Connor* v. *Carpenter,* 144 Mich. 240. That principle is this:

"One who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another for failure to bring suit against that other within a time specified to test the validity of the claim which the latter asserts, but takes no steps to enforce." Cooley on Constitutional Limitations (6th Ed.), p. 449.

That principle preserves the rights of the one in possession. It applies only where he has rights. In this case defendant in possession had no rights, and therefore the principle has no application. A contrary holding would, in my judgment, require us to say that *Semer* v. *Auditor General,* 133 Mich. 569, and *Jackson, etc., R. Co.* v. *Lumber Co.,* 146 Mich. 204, were erroneously decided. It is true, as pointed out by Justice OSTRANDER, that under our tax law the former owner in possession of State

tax lands may, because his land is determined to be State tax homestead land, be deprived of acquiring the right to redeem which his neighbor similarly situated does acquire. This discrimination was authorized by the legislature. It may be unjust. If so, the legislature, and the legislature alone, can give relief. It is not unconstitutional.

I think the judgment should be affirmed.

MCALVAY, C. J., and GRANT, BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred with CARPENTER, J.

GRANT, J. I concur fully in the opinion of my Brother CARPENTER. In view of the opinion of my Brother OSTRANDER, I desire to refer more fully to the facts in this case than is done in their opinions.

Plaintiff made his case by introducing the deed, dated December 12, 1904, from the commissioner of the State land office to the plaintiff. This deed is prima facie evidence of title, and of the regularity of the proceedings by which title was acquired. It was admitted that defendants Ruhstorfer were in the actual possession of the property at the time the suit was commenced. Plaintiff then rested. Defendant then introduced the deed from the auditor general of the State to the State of Michigan, dated September 21, 1904, conveying the land therein described to the State, under section 127, Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899. That deed recited the examination and determination of the auditor general and the commissioner of the State land office, as provided in section 127 of Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899, and the filing of a certificate by the examiner that the lands were abandoned. It was admitted by the parties that the record title stood in defendant Kennedy, subject to the tax liens and tax proceedings, and had been in him for a number of years prior to these proceedings. A witness for the defendants testified that he (the witness) had been in charge of the property, had collected rent

therefor; that Joseph Ruhstorfer was a tenant under Kennedy, and had been in possession of the property since March 1, 1904. He also testified that from January 13, 1904, to March 1, 1904, the house on said property was unoccupied. This comprises all the testimony in the case.

It was the duty of defendant Kennedy to show that the title was void. No such showing or attempt to show is shown upon this record. As shown by the deed from the auditor general to the State, defendant Kennedy had neglected to pay his taxes for 18 years, from 1882 to 1903. No excuse is offered for not paying the taxes, or for failing to appear in the numerous chancery proceedings, brought by the auditor general to foreclose the tax lien, and to contest the validity of the taxes if he had any objection thereto. In deciding this case, therefore, we must hold that all the proceedings were regular, and that the State obtained title to the lands. I am unwilling to cast any doubt upon the many decisions of this court holding that the State acquires the absolute title to these tax lands. The original owner, after decree and sale, may in a proper proceeding attack the title for certain reasons. When the title is in the State, the original owner has no more interest in it than any stranger to that title. He may purchase the land from the State as may any other person.

The design and object of proceedings in chancery are to give the landowner his day in court to test the validity of the tax proceedings. He is a party to that litigation. He knows that his lands are subject to taxes, that he has not paid them, and that proceedings will be taken to foreclose the tax lien. His property is advertised in the public notice required to be given. It does not lie in his mouth, under these circumstances, to say that he has had no opportunity or day in court to test the validity of the taxes assessed against him, or of the regularity of the proceedings by which the State has acquired title to his land. Act No. 229, Pub. Acts 1897, did not change the validity

of that title or cast any doubt upon it.   That statute simply provided that, when the State sold and conveyed its title, its grantee should give the original owner a notice of his purchase, and that such owner should be entitled to a reconveyance upon payment of double the amount paid to the State, and certain other charges.   That statute did not use the words "redeem" or "redemption." The notice to be served required that the purchaser from the State should say in it that he "has title thereto under the tax deed."   In the amendment made to this law by Act No. 236, Pub. Acts 1903, the first section of Act No. 229 was not changed in this respect.   The forepart of the second section remains the same; the term "reconveyance" being used.   The amendment to section 2, being section 141 of the general tax laws, provides that:

"Any person owning any right, title or interest in said lands shall at any time after the date of issue of tax deeds thereon, and before service of notice as herein provided, be entitled to redeem the land from sale by paying to the register in chancery of the county in which the lands lie, on the certificate of the auditor general or his deputy, all sums paid as a condition of such purchase, together with one hundred per cent. additional thereto, and the further sum of five dollars for each description.   By such payment the tax title shall become void and of no effect against the lands thus redeemed.   The register in chancery shall, whenever payment is made to him as provided in this section, at once notify the owner of the tax title of the payment so made, and the owner of the tax title shall forthwith deliver a quitclaim deed of said land running to the person making such payment, and shall also deliver to said register the tax deed, certificates of purchase, tax receipts and all other conveyances relating to said tax title before he shall be entitled to receive the money paid to said register as herein provided.   Upon delivery of such reconveyance the register in chancery shall at once pay over to the owner of the tax title all sums received by him for redemption of the lands therein described."

In construing what the words "redeem" and "redemption" mean in this statute, the entire statute must be considered.   To my mind the conclusion is irresistible that

Act No. 229, Pub. Acts 1897, as amended by Act No. 236, Pub. Acts 1903, is not intended to cast a doubt upon the title of the State or the title of the purchaser from the State. On the contrary, it recognizes that title as valid, and in selling and conveying its title it imposes a condition, which it has the right to do, as has any private individual in selling his property, that such purchaser must serve a notice upon the original owner that he has a valid title, and, if the original owner chooses to pay him certain amounts, the tax purchaser shall reconvey the title to him. The law confers upon the negligent owner, not any title or right, but a privilege to obtain a reconveyance upon specified terms. The record does not show when the examination to determine whether the land was abandoned was made. No one may then have been in possession. The abandonment which the statute contemplates is not at the time the deed from the auditor general to the State is executed, but at the time the examination is made to determine that fact. It is conceded that defendant Kennedy was not in the actual possession. If possession by the defendants as his tenants were a defense to the action, he has failed to make it appear that such occupancy existed when the examination was made.

OSTRANDER, J. (*dissenting*). This court has used the words "absolute title" in describing the interest acquired by the State in lands sold for taxes after the statute period of redemption had expired. The opinions in which the words appear to have been given the largest meaning are, it seems to me, *Allen* v. *Cowley*, 128 Mich. 530, *Hickey* v. *Rutledge*, 136 Mich. 128, and *Blake* v. *Grondin*, 141 Mich. 104. There may be other cases in which the extent of the interest so acquired by the State is expressed otherwise than by the somewhat general formula "absolute title." It is apparent that, if the tax law is to be construed and applied according to a notion that the interest of the landowner is completely divested when his land is sold and he has failed to redeem it, conclusions will be

reached widely different from those arrived at in conformity with the idea that, until some one possessing the right to the entire beneficial interest in the land appears, there remains with the landowner an interest in the land of which he has not theretofore been divested. Whether construction shall proceed according to one or other of these notions is not determined by reasoning based upon what the legislature, in making a tax law, might have done. We know what the legislature has done, and construction, where it is necessary, must proceed upon the assumption that it has concluded the exercise of legislative power in this behalf. Indeed, if the legislature might have saved less to the landowner than it has, it is ground for an argument for, rather than against, the proposition that it has not meant to divest him of all interest in the land except as an ultimate instead of an intermediate result of the enforcement of the law. To my mind, the idea most agreeable with reason is that so long as a beneficial interest in land, possessed by the owner of the original title, is left undisturbed and capable of being enjoyed by him, he has not lost it. So long as it is required that proceedings must be taken by the purchaser of the interest of the State before any person, other than the original owner, can acquire this beneficial interest, in which proceedings, at the option of the owner of the original title, the interest of such purchaser may be extinguished or acquired, the owner has not been divested of all interest in the land, whether such interest is called "title" or something else. The original title is the only title which is or ever was in existence which carried with it as a necessary incident to its owner the beneficial interest in the land.

Due process of law to deprive one of land means, I take it, something more than a legislative declaration that the *title* to land has been acquired by the State, when such declaration is coupled with the further one that, before the title so acquired can draw to it any interest in the land which is beneficial, it must be offered to the land-

owner at a fixed price, be refused, and then enforced by judicial proceedings in which such title is to some extent open to attack by the landowner. This court declared, in *Corrigan* v. *Hinkley*, 125 Mich. 125, that the owner of the title to State tax lands had not even a colorable right of entry, and that in taking possession he was a trespasser upon the lands described in his deed until he had complied with the statute requiring notice to be given to the owner. To the same effect is *Huron Land Co.* v. *Robarge*, 128 Mich. 686, and other decisions. See, also, *O'Connor* v. *Carpenter*, 144 Mich. 240; *Griffin* v. *Jackson*, 145 Mich. 23; *John Duncan Land & Mining Co.* v. *Rusch*, 145 Mich. 1; *Toolan* v. *Longyear*, 144 Mich. 55; *Adkin* v. *Pillen*, 136 Mich. 682; *Boucher* v. *Trembley*, 140 Mich. 352. It is these and similar decisions which in my opinion support the proposition that the words "absolute title," however many times employed, are conveniently descriptive, rather than legally definitive, of the extent of the interest conveyed to and possessed by the purchaser of State tax lands, and that it is open to the court to hold that the owner of the original title is not by sale of his lands for taxes and expiration of the period of redemption divested of all interest in the land. Under certain conditions, lands held as State tax lands may be deeded by the auditor general to the State, and be sold at the State land office. The State does not in this way acquire a new interest in the land, and is not a purchaser from the auditor general. It is a measure of convenience. The legislative notion seems to have been that such lands had no longer any proprietor representing the original title—were abandoned. If inquiry develops the fact that the lands are occupied (if abandonment is negatived) the lands remain in the class known as State tax lands. It is only unoccupied lands which are so subject to disposition. *Meagher* v. *Dumas*, 143 Mich. 639. An unexpired right of redemption will make the deed to the State and from the State to the purchaser, under this provision of the

148 MICH.—38.

law, ineffectual. *Morse* v. *Auditor General*, 143 Mich. 610.

If I am right in concluding that the owner of the original title has still an undivested interest in such lands, at least to the point of his abandonment of the lands, he is interested in the proceedings instituted for the purpose of connecting the beneficial interest in the land with the title acquired from the State—proceedings to divest him of his remaining interest, whatever it is. As the right of the State to treat the land as abandoned depends upon the ascertainment and declaration of a fact, the owner against whose interest the fact may be found ought not to be concluded without opportunity to be heard. Upon the trial of the instant case, plaintiff introduced in evidence a deed from the commissioner of the State land office, dated December 12, 1904, conveying the land. Defendant introduced a deed of the same land from the auditor general to the State under the provisions of section 127, Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899, dated September 21, 1904, and testimony undisputed to prove that by tenant defendants were in actual occupancy of the land from March 1, 1904, to the time of the trial. The land was not therefore abandoned land at the time the auditor general and commissioner of the State land office determined that it was abandoned, if the statute duty of those officers was performed, as we assume that it was. The deed from the commissioner to the plaintiff is prima facie evidence of title. Act No. 211, Pub. Acts 1905. This evidence was met, in my opinion, by the proof of actual occupancy of the land for more than six months before the deed was executed. Plainly, the statute does not mean that the owner in possession shall be dispossessed or be put in a position where he may be dispossessed by a false determination of the fact of occupancy. It is provided, however, that the determination, right or wrong, shall conclude him, unless he attacks it within six months after it is made. Section 127 of the tax law, considered as a statute of limitations, is invalid

because no notice, public or other, of the determination of abandonment, is provided for. It is invalid under the rule of *O'Connor* v. *Carpenter*, supra, because requiring the owner in possession to attack the determination that the land is abandoned. It is invalid as an attempt to divest the owner of the original title in possession of an interest in the land without hearing and without judicial investigation and determination. As matter of practice, adjoining, occupying owners of land, holding the same relations with the State, may be placed in wholly dissimilar positions as to their rights by a determination, made without notice, that the premises of one of them are abandoned. It is said that the right to question the validity of the title acquired from the State remains; but, in the case supposed, the right to pay the taxes and penalty after notice does not remain to one and does to the other of these adjoining owners. Also, it will be perceived that, if notice of the determination of abandonment should be received, the owner having the knowledge may pay the taxes, interest, and charges, have returned to him all invalid taxes, and discharge absolutely the interest of the State in the land.

The judgment should be reversed, and a new trial granted.