GRAND RAPIDS TRUST CO. *v.* DOCTOR.

1. TAXATION—TITLE IN STATE BY TAX DEED ABSOLUTE.
   Where lands conveyed to the State by the auditor general for delinquent taxes under 1 Comp. Laws 1915, § 4126, were held by the State under sections 4129, 4130, subject to homestead entry, and, no applications for homesteading having been received, they became subject to sale and were conveyed to the original owner whose interest therein had been as completely cut off by said sale to the State as if he had been a stranger to the title, said conveyance vested in him an absolute title in fee.

2. ADVERSE POSSESSION—RIGHTS CUT OFF BY TAX DEED TO STATE.
   A squatter's rights to land by adverse possession were cut off by a sale of the land to the State for delinquent taxes as well as the rights of the original owner, and a reconveyance by the State to the original owner started a new chain of title against which adverse possession must run for the statutory period in order to give title by adverse possession.

On adverse possession of property sold for taxes, see note in 35 L. R. A. (N. S.) 743.

As to unbroken continuity as essential element of adverse possession, see note in 15 L. R. A. (N. S.) 1202.

Error to Muskegon; Vanderwerp (John), J. Submitted January 18, 1923. (Docket No. 21.) Decided March 22, 1923.

Ejectment by the Grand Rapids Trust Company against Dick Doctor. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Lovelace & Broek* (*F. E. Wetmore,* of counsel), for appellant.

*Wicks, Fuller & Starr* (*Cross, Foote & Sessions,* of counsel), for appellee.

STEERE, J. This action in ejectment was brought by plaintiff as trustee of the heirs of John Torrent, deceased, to recover from defendant possession of property described as "a portion of blocks five hundred forty-six (546), five hundred forty-seven (547) and five hundred forty-eight (548) of the revised plat of the city of Muskegon, Michigan." Defendant pleaded the general issue with special notice of claim of title to the property acquired by adverse possession. The action was commenced by summons on March 11, 1921. On February 7, 1922, a verdict in ejectment for plaintiff was rendered by a jury under direction of the court and judgment entered thereon in its favor.

It appears that the original government description of which the property in question formed a part was patented to one Theodore Newell in 1841 and by mesne conveyance John Torrent acquired title to the same on June 9, 1903. On March 15, 1906, the auditor general conveyed to the State of Michigan "entire block two hundred two Smalley's survey, city of Muskegon, according to plat thereof," previously bid in for delinquent taxes of 1895 to 1901, inclusive, and also by deed of the same date, "entire block 199 and the

west half of block 299 of Smalley's survey of the city of Muskegon," for delinquent taxes of 1895 to 1905, inclusive. The lands so conveyed include those described in plaintiff's declaration under new numbers on the revised plat of the city. These conveyances were recorded in the office of the register of deeds of Muskegon county on November 16, 1906.

On October 30, 1909, Huntley Russell, commissioner of the State land office, sold and conveyed to John Torrent entire block 199 of Smalley's survey of the city of Muskegon, "now known as entire blocks 546, 547 and 548, according to the map of 1903," it being recited amongst other things that the deed was given "under section 131, Act No. 206, Pub. Acts 1893, as amended by Act No. 141, Pub. Acts 1901." This deed was recorded in the office of the register of deeds of Muskegon county January 12, 1910.

As against plaintiff's record proof of title defendant introduced testimony to the effect that he had been in possession of the premises in question since the year 1903, and in 1905 had built a house thereon, since which time he had lived in the house and occupied the premises, the value of the house and other improvements made by him thereon amounting to $700, and that he claimed ownership of the same by prescription. It was also shown by other testimony that he took possession of the land as a squatter without right or title thereto, it then lying open, unoccupied and unimproved; that he never fenced any portion of it, cleared but a small patch for a garden and never paid any taxes upon the land, but did for two years pay a personal tax on his house assessed against him as personal property on a valuation of $500.

At conclusion of proofs the court directed a verdict for plaintiff, holding that the conveyances of March 15, 1906, from the auditor general to the State, and from the State, by the commissioner of the land office,

to Torrent in 1909, "started a new chain of title" and defendant had not been in possession of said premises for a sufficient length of time since March 15, 1906, to establish title by prescription.

Defendant's assignments of error are that the "court erred in overruling the motion of defendant to direct a verdict in his favor, * * * in holding that the said State homestead deed cut off all prior titles (and) in directing said jury to return a verdict for the plaintiff."

In deciding the case the trial court held immaterial and struck out all evidence of plaintiff's title prior to the deeds from the auditor general to the State of Michigan of March 15, 1906, holding that by such conveyances the State became completely vested with an absolute title in fee to said property distinct and independent of any preceding transactions in relation to it which could in any way affect the title which the State might thereafter convey.

It is contended for defendant that, having become owner of this land in 1903, it was Torrent's duty to pay all taxes then due or thereafter levied upon the same; that by neglecting to do so, permitting the land to be conveyed to the State for delinquent taxes and thereafter buying it from the State, he acquired no other nor greater title than he had in the first instance, but simply re-acquired and was confirmed in the title he originally had, and he could not by such method take advantage of his own negligence in failure to pay his taxes as they came due. In support of this contention counsel cite cases sustaining the general proposition that one who ought to pay the taxes on property cannot, by omitting to do so, purchase the same at a sale for nonpayment of taxes and thereby strengthen his title; that a deed so obtained by him would convey no other or greater title than he previously had, but such a payment of money to the State

will be regarded as a payment by him of his taxes and not as a purchase of the property.

On the part of plaintiff it is contended that rule has no application where absolute title has been acquired by the State and the property placed in the list of tax homestead lands pursuant to provisions of the statute upon that subject, when the original owner thereafter has no more interest in it than any stranger to that title.

Section 4126, 1 Comp. Laws 1915, authorizing conveyance to the State by the auditor general of lands bid in for delinquent taxes for five years or more after time for redemption had expired with no application to pay, redeem or purchase and no action taken to remove cloud or set the taxes aside, declares, "the title to the State shall be deemed absolute in and to said lands." When, pursuant to required findings and prescribed steps, a deed of such lands from the auditor general to the State is executed and delivered to the commissioner of the State land office, no litigation can be instituted "to vacate, set aside or annul the said determination of the said auditor general and the commissioner of the State land office made as aforesaid unless instituted within six months" after the determination is made.

The various required steps leading up to deeding such lands to the State provide amongst other things that they shall no longer be subject to taxation, until again sold and deeded by the State (§ 4129), and shall be held subject to entry as homestead land unless reserved for other purposes as authorized (§ 4130). If no application to homestead the same is made for three years or more after they become subject to homestead entry they may, following a proper appraisal, be sold for not less than the appraised valuation to *any* person applying to purchase the same, to whom the land commissioner shall execute a deed "which

shall convey to the purchaser the same interest as provided for a deed where said lands have been homesteaded as provided in this section." That provision is: "Such deed shall convey an absolute title to the lands sold, and shall be conclusive evidence of title in fee in the grantee," which it is made the duty of the State to protect.

Under these proceedings the former owner becomes a stranger to the title to the lands so forfeited and deeded to the State. The State takes absolute title to the same in consideration of the taxes he owed, and relieves him from any obligation to pay further taxes thereon. His rights and duties in connection with the land as owner and taxpayer are at an end. The distinction between continuing taxation and tax sales under the general tax laws, and a transfer to the State under this special tax homestead law is clearly pointed out in the opinion of Justice CARPENTER in *Griffin* v. *Kennedy,* 148 Mich. 583. Concurring in that opinion, Justice GRANT, referring to former decisions, said:

"I am unwilling to cast any doubt upon the many decisions of this court holding that the State acquired the absolute title to these tax lands. The original owner, after decree and sale, may in a proper proceeding attack the title for certain reasons. When the title is in the State, the original owner has no more interest in it than any stranger to that title. He may purchase the land from the State as may any other person."

*Vide,* also, *Chiodo* v. *Williams,* 180 Mich. 367; *Darrow* v. *Railway Co.,* 188 Mich. 664.

When Torrent bought this land from the State in 1909 his original title and obligations in relation to it had been wiped out three years before. He bought from the State as a stranger to the title and his previous ownership bore no relation to the purchase. The deed he then received was made by the act under

which he purchased "conclusive evidence of title in fee in the grantee."

When defendant, Dick Doctor, entered into possession of these premises in 1903, "without right or title and merely as a squatter," and when he built and began living in a house he erected thereon in 1905, the land had been sold for delinquent taxes and bid in by the State, so continuing annually until 1906 when it was deeded to the State and no longer assessed for taxes, thereafter remaining open to homestead entry for the next three years. Though residing upon the land, he neither purchased tax titles to it nor made homestead entry of it, as he might have done. He paid no taxes assessed against it, but recognized the house he had built upon it and occupied was personal property by paying two years' taxes assessed against it as such. During all this time the land stood forfeited for nonpayment of taxes and bid in by the State which held title thereto. *Hickey* v. *Rutledge*, 136 Mich. 128; *Blake* v. *Grondin*, 141 Mich. 104. In 2 C. J. p. 215, it is said:

"The weight of authority is that the principle that the statute does not run against the Commonwealth applies not only as to her sovereign right of original dominion, but also as to every secondary or derivative right of property."

And in note 48:

"Where lands have been forfeited to the State under the delinquent tax laws or otherwise, (1) they cannot be the subject of adverse possession while the title thus acquired remains in the State. *Bagley* v. *Wallace*, 16 Serg. & R. (Pa.) 245. (2) and if the lands were held adversely to the owner at the time of the forfeiture the adverse character of the occupancy ceases when the State acquires title and cannot be asserted against either the State or its grantee;" citing numerous cases including *Armstrong* v. *Morrill*, 14 Wall. (U. S.) 120.

This rule is recognized in *Merritt* v. *Westerman,* 165 Mich. 537, as follows:

"An examination of these cases will show that, in some of them, title was forfeited to the State for non-payment of taxes, and, under the familiar rule that title by adverse possession cannot be acquired against the State, such forfeiture interrupted the running of the statute."

Under these authorities defendant could acquire no adverse possession of this land until the State deeded it to Torrent in 1909, and he falls far short of showing the statutory period of adverse possession requisite to establish title by prescription.

The deed from the land commissioner to Torrent was in full form with recitals showing compliance with the law.   As such it could not be and was not questioned.   When introduced in evidence, it not only made a *prima facie* case for plaintiff, but was, under the statute, conclusive evidence of title in fee in the grantee.

We think the trial court rightly concluded from the language of the statute, as discussed and interpreted in former decisions, that it was the intent of the legislature all previous titles and rights of individuals should be cut off and a new, distinct chain of title started in and from the State when in pursuance of the special statute the auditor general deeded the land to the State following the prescribed time and proceedings by offer, sale and conveyance from the State to "any person" applying for purchase thereof as the act authorized.

The judgment will stand affirmed.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.