PRICE *v.* STARK.

1. TAXATION—RIGHTS OF FORMER OWNER CUT OFF BY STATE TAX HOMESTEAD DEED.

Rights of former owner of land were absolutely cut off by deed from State of State tax homestead land, where no attack was made upon it within six months after its execution (Act No. 206, Pub. Acts 1893, §§ 127, 130, 131, Act No. 141, Pub. Acts 1901, Act No. 107, Pub. Acts 1899).

2. SAME—NOTICE TO REDEEM—OWNER AT TIME LAND BECAME STATE
   TAX HOMESTEAD LAND NOT ENTITLED TO NOTICE TO REDEEM FROM
   SUBSEQUENT TAX DEED.

   Failure of purchaser under State tax deed for delinquent taxes
   of 1924 to serve notice to redeem upon owner and certain tax
   title holders at time land was conveyed to State as State tax
   homestead land in 1907 did not render purchaser's title de-
   fective, since no right existed in said former owner to redeem
   therefrom and therefore no notice was necessary.

   POTTER, FEAD, and BUTZEL, JJ., dissenting.

Appeal from Iosco; Dehnke (Herman), J. Sub-
mitted April 8, 1932. (Docket No. 75, Calendar No.
36,400.) Decided June 23, 1932.

Replevin in justice's court by W. H. Price against
Rudolph Stark to recover a quantity of logs. Case
certified to circuit court. Judgment for defendant.
Plaintiff appeals. Reversed, and judgment ordered
entered for plaintiff.

*A. W. Black* (*J. L. McCormick,* of counsel), for
plaintiff.

*N. C. Hartingh,* for defendant.

SHARPE, J. The record discloses that on January
30, 1907, the auditor general deeded to the State of
Michigan the lands here in question under the pro-
visions of the law then in force, being Act No. 206,
Pub. Acts 1893, as amended by Act No. 141, Pub.
Acts 1901, the same having become State tax home-
stead land. On March 3, 1911, the State conveyed
this land to James Wilson Brooks, and, by mesne
conveyances subsequently made, the title rested in
James W. Sanderson on April 9, 1926. On June 5,
1928, a State tax deed was issued to W. A. Evans for
the delinquent taxes for the year 1924. Notice to re-

deem therefrom was duly served on Sanderson, and no redemption had. Title thereupon became vested in Evans, who conveyed to the plaintiff on May 21, 1929.

The question here presented is whether plaintiff's title is defective by reason of the failure of Evans to serve a notice to redeem upon the owner and certain tax title holders at the time the land was conveyed to the State on January 30, 1907, as appears by the chain of title then existing.

The first provision in our tax law providing for the issue of State tax homestead deeds appears in the general tax law of 1893, Act No. 206, § 127. It provided that, whenever lands had become delinquent for taxes for a consecutive period of more than three years and no application had been made to redeem or purchase them, the auditor general and commissioner of the State land office, when requested to do so by the township board of the township in which they were situated, should cause an examination to be made of them, and, if it appeared that they had been abandoned by the owner, upon a certificate being filed to that effect the auditor general should transfer them by a deed to the State. Section 130 provided that all delinquent taxes thereon should be canceled, and lands on which taxes had been spread prior thereto were ordered stricken from the tax rolls, and they were thereafter known as State tax homestead lands and were subject to homestead entry as such (section 131). The title thus acquired by the State by deed to it from the auditor general must not be confused with that which passes to it on the sale of lands delinquent for taxes, and under which the auditor general may issue a State tax deed to a purchaser from which the owner may always redeem. In 1901 (Act No. 141), section 131 was

amended to provide that after said lands had been so held by the State subject to such homestead entry for three years or more they should be ''open to sale and purchase.'' On application therefor it was made the duty of the commissioner of the State land office to examine and appraise the value thereof, and authority was given to him to sell the same at not less than the amount so fixed and to execute a deed therefor—

''which shall convey to the purchaser the same interest as is provided for a deed where said lands have been homesteaded as provided in this section.''

When held as homestead lands, they were—

''subject to the same rules and regulations now in force as to other homestead lands not inconsistent with the provisions of this act.''

It was also provided:

''And in all cases where the lands have been taken as a homestead as set forth in last foregoing proviso, all actions of ejectment or to recover possession of said lands or to set aside the title of such homesteader by any person, firm or corporation claiming the original or government title, shall be commenced within six months after this act shall take effect, and not afterwards.''

These provisions were in force at the time the land was conveyed by the auditor general to the State in 1907, and by it to Brooks in 1911.

Section 127, as amended by Act No. 107, Pub. Acts 1899, providing for a determination by the auditor general and State land commissioner of the lands to be deeded to the State and thus become tax homestead lands, and that such determination should be conclusive unless suit was instituted to vacate the

same, and section 131, in which the time limited for actions affecting the title of the homesteader was limited to six months after the act took effect, came before this court for consideration in *Semer* v. *Auditor General,* 133 Mich. 569. The court sustained the proceedings under which the deed to the State was executed, and held valid the limitation of time fixed in which the homesteader's title might be attacked. See, also, *People* v. *Christian,* 144 Mich. 247, and *Jackson, etc., R. Co.* v. *Solomon Lumber Co.,* 146 Mich. 204.

In *Griffin* v. *Kennedy,* 148 Mich. 583, an action of ejectment was brought by a party whose title was "derived from a deed executed under the State tax homestead law" against a former owner of the land who was then in possession. The opinion, written by Mr. Justice CARPENTER, discusses at length the nature of the title acquired by a purchaser under the homestead law and the effect of the provision in Act No. 229, Pub. Acts 1897, providing for notice by a tax title purchaser and the right of redemption thereunder, which it was insisted applied to such purchases. We quote therefrom:

"I think it a conclusive answer to this argument to point out that at the time Act No. 229, Pub. Acts 1897, was passed the act under consideration in this case, viz., the act providing for the sale of State tax lands for homesteads, was already upon the statute books. It is clear, and I think it will be conceded, that the legislature did not intend by enacting said Act No. 229 to affect the disposition of State tax lands under the State tax homestead law. At the time Act No. 229 took effect, the State tax lands were then of two classes: *First,* those which might be sold for homesteads under the State tax homestead law; *second,* those which might be sold to purchasers under the

general tax laws. In enacting said law, the legislature did not intend that the land in the first class should be subject to redemption in the hands of a purchaser from the State, but it did intend that land in the second class should be subject to said redemption. Whether a particular description of land belonged to the one or the other of these two classes manifestly could not be determined prior to its sale or classification. Until sold under the general tax laws, any particular description of land might become tax homestead land. It follows, therefore, that the legislature did not intend to lessen the State's title in State tax lands generally. It intended merely to give owners the right to redeem after the State tax lands formerly owned by them were sold by the State to private purchasers under the general tax laws.''

The validity of the six months' limitation provision was again sustained. The holding in this case was cited with approval in *Downer* v. *Richardson,* 148 Mich. 596, 602; *Holmes* v. *Loud,* 149 Mich. 410, 415; *Chandler* v. *Clark,* 151 Mich. 159, 183; *Haney* v. *Miller,* 154 Mich. 337, 340, and *Beuthien* v. *Dillon,* 160 Mich. 396, 400, 401. It was considered and reviewed at some length by Mr. Justice STEERE in *Grand Rapids Trust Co.* v. *Doctor,* 222 Mich. 248, wherein the rights of a purchaser under a State tax homestead deed were involved. It was therein said (page 253):

''Under these proceedings the former owner becomes a stranger to the title to the lands so forfeited and deeded to the State. The State takes absolute title to the same in consideration of the taxes he owed, and relieves him from any obligation to pay further taxes thereon. His rights and duties in connection with the land as owner and taxpayer are at an end. The distinction between continuing taxation and tax sales under the general tax laws, and a trans-

fer to the State under this special tax homestead law is clearly pointed out in the opinion of Justice CARPENTER in *Griffin* v. *Kennedy,* 148 Mich. 583. Concurring in that opinion, Justice GRANT, referring to former decisions, said:

" 'I am unwilling to cast any doubt upon the many decisions of this court holding that the State acquired the absolute title to these tax lands. The original owner, after decree and sale, may in a proper proceeding attack the title for certain reasons. When the title is in the State, the original owner has no more interest in it than any stranger to that title. He may purchase the land from the State as may any other person.'

"*Vide,* also, *Chiodo* v. *Williams,* 180 Mich. 367; *Darrow* v. *Railway Co.,* 188 Mich. 664."

These decisions seem conclusive that the rights of a former owner have been absolutely cut off by a deed from the State of State tax homestead lands where no attack is made upon it within six months after its execution. It has, in my opinion, been so understood by all persons dealing in titles thus acquired until doubt was cast upon it by the decision in *Marshall* v. *Anderson,* 233 Mich. 480. It was upon this decision that the trial court, reluctantly as it appears, sustained the claim of the defendant. The distinction, however, seems apparent. Mr. Justice BIRD, who then spoke for the court, stated with approval the rule announced in *Griffin* v. *Kennedy, supra,* that "the former owners had been divested of title when they became homestead lands." It appeared, however, in that case that the deed from the State to the purchaser of the tax homestead land had not been recorded, and, the equities strongly favoring the right to redeem, it was held that she had the right to do so. A careful reading of that decision will show that there was no intent to overrule the holding in the many cases above referred to in which it had been held that a new chain of title starts with the record of a deed by the State to a purchaser

of State tax homestead land, and that no right exists in a former owner or mortgagee to redeem therefrom, as provided for in the case of State tax deeds.

The judgment entered is reversed and set aside, with costs, and the cause remanded with direction to enter a judgment for the plaintiff.

Clark, C. J., and McDonald, North, and Wiest, JJ., concurred with Sharpe, J.

Potter, J. (*dissenting*).    Plaintiff brought replevin for forest products, in justice's court, against the defendant.    The right of plaintiff to recover depended upon his showing title to the real estate upon which the products were grown.    The case was certified to the circuit court, where it was tried, and judgment for defendant entered.    Plaintiff appeals.

Plaintiff claims title to the land in question by tax deed given June 5, 1928, for 1924 taxes and notice to redeem served on James W. Sanderson, the claimed last record title owner, who received title by quitclaim deed in 1922 from the estate of James W. Brooks, who received title from the State under a State tax homestead deed given in 1911; notice to redeem under the tax deed was served June 28, 1928, by plaintiff's grantor, Evans, upon Sanderson. Defendant claims plaintiff's title is defective because notice to redeem was served on the last grantee or grantees in the regular chain of title of such lands, and consequently defendant had a right to redeem at any time because persons entitled to notice to redeem had not been served.

The question depends upon the construction of 1 Comp. Laws 1929, § 3535, which, among other things, provides:

"Until six months after there shall have been filed with the county clerk of the county where the land is

situated, a return by the sheriff of said county showing that he has made personal service of a notice or proof of substituted service thereof, as hereinafter provided, upon the person or persons appearing by the records in the office of the register of deeds of said county to be the *last grantee or grantees in the regular chain of title* of such lands or of any interest therein, at the date of the delivery of such notice to the sheriff for service, and upon the person or persons, if any there be, in the actual open possession of such lands at the date aforesaid and *upon the grantee or grantees under the tax deed issued by the auditor general for the latest year's taxes then appearing .of record in said registry of deeds.*"

In *Griffin* v. *Jackson*, 145 Mich. 23 (9 Ann. Cas. 74), it was said:

"We are of the opinion that by 'regular chain of title' was meant the chain of title based upon the patent, and that one claiming under another tax title was not intended to be included, although we can imagine cases where it would be as important that he should be included—*e. g.*, where his tax title has been sustained by law, and he is in possession under it— and in any case it would seem just that he should be. The legislature recognized this in the later statute, making special provision for notice to both classes."

In *G. F. Sanborn Co.* v. *Richter,* 176 Mich. 562, the court said:

"The second position is foreclosed against defendant's contention by the case of *Griffin* v. *Jackson*, 145 Mich. 23 (9 Ann. Cas. 74), where this court, speaking through Justice Hooker, said:

" 'We are of the opinion that by "regular chain of title" was meant the chain of title based upon the patent.'

"The statute (section 140 of the general tax law) provides for service of the notice upon 'the grantee

or grantees under the last recorded deed in the regular chain of title to said land, and upon the grantee or grantees under the last recorded tax deed issued by the auditor general,' etc.    This language is so plain as to render construction unnecessary.    *    *    *

"Until the statutory notice is served upon all parties entitled thereto and proof thereof is made and filed, the right of redemption remains to all.  *Hansen* v. *Hall,* 167 Mich. 7, and cases there cited."

In *Marshall* v. *Anderson,* 233 Mich. 480, 483, sought to be construed as militating against the cases above cited, it is said:

"The privilege of redemption was given to one whose lands had been sold for taxes to enable him to pay up and secure a reconveyance of his land. Where the auditor general had sold lands this right would be valuable, because the owner would have a contingent interest in the land, but this privilege would be of no avail to the former owners of State tax homestead lands, as the former owners had been divested of title when they became homestead lands. *Griffin* v. *Kennedy,* 148 Mich. 583.  Had notice been served on them they would not thereby have been enabled to redeem, as they had nothing to redeem, they had no contingent nor equitable interest.  Therefore, the notice to redeem served on former owners of State tax homestead lands would be a useless ceremony."

The difficulty with this reasoning is that it assumes the proceedings which divested the title of the former owners of the land, in the regular chain of title, were regular, and it ignores entirely the mandatory language of the statute.  The question whether the title from the State had been recorded or not did not control in that case.  The court understood in *Marshall* v. *Anderson* that in *G. F. Sanborn Co.* v. *Richter* it was held that notwithstanding the former own-

ers had divested themselves of the title, they were entitled to the statutory notice to redeem. It recognized the giving of notice in compliance with the statute was mandatory, saying:

"Considering all the questions which this holding involves, we think it is the better conclusion to say that the statute is mandatory and should be complied with."

We hold, in accordance with the previous decisions of this court, the statute mandatory, and the failure of the plaintiff to comply therewith rendered his claimed title vulnerable. Judgment of the trial court should be affirmed, with costs.

FEAD and BUTZEL, JJ., concurred with POTTER, J.