MANUEL VISITACIÓN RIVERA COLÓN, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

No. 957.—*Sometido:* Noviembre 4, 1935. *Resuelto:* Diciembre 12, 1935.

*C. Domínguez Rubio,* abogado del recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

En mayo, 1905, se vendió para el pago de contribuciones una parcela de once cuerdas de terreno como perteneciente a Bonifacio Aquilino Díaz, y se inscribió a nombre de El Pueblo de Puerto Rico. Las secciones 1 y 2 de la Ley núm. 20 aprobada en 11 de marzo de 1915 (Leyes de ese año, pág. 52) leen así:

"Artículo 1.—Que a los anteriores dueños de cualquier propiedad inmueble que se hubiere vendido por falta de pago de contribuciones y hubiere sido adquirida bajo subasta por El Pueblo de Puerto Rico, después del 1o. de julio de 1901 y con anterioridad al primero de julio de 1914, que estuviere actualmente en posesión de El Pueblo de Puerto Rico o a los herederos legítimos de dichos anteriores dueños o cesionarios o a cualquiera persona que tuviere interés alguno en la misma, se les concede por la presente el derecho de redimir dicha propiedad dentro de un año contado desde la fecha en que principia a regir esta ley, mediante el pago a El Pueblo de Puerto Rico del precio por el cual fué subastada dicha propiedad inmueble, e intereses desde la fecha de la subasta en que fué rematada, a razón del cuatro y medio por ciento anual.

"Artículo 2.—Cuando la propiedad que va a ser redimida se hallare inscrita a nombre de El Pueblo de Puerto Rico, el Tesorero de Puerto Rico notificará al registrador de la propiedad en cuya oficina estuviere inscrita dicha propiedad, y el registrador, mediante el pago de un derecho de un dólar por la persona que redimiere, hará constar en el certificado de compra por El Pueblo de Puerto Rico el hecho de la antedicha redención y que la propiedad de ese modo redimida responderá de todos los gravámenes y reclamaciones legales contra ella, fuera de los gravámenes por concepto de contribución en virtud de los cuales fué vendida, en la misma extensión y del mismo

modo como si la mencionada propiedad no hubiere sido vendida para el pago de contribuciones."

Aquilino Díaz redimió la finca en junio de 1915 y en junio de 1917 la inscribió a nombre propio. Una escritura de enajenación otorgada por Aquilino Díaz y su esposa a favor de Manuel Visitación Rivera Colón fué inscrita en junio de 1918 "con el defecto subsanable de no acreditarse que doña Petronila Rodríguez sea la misma esposa con quien estuviera casado el vendedor cuando adquirió éste el inmueble vendido". En junio, 1935, Manuel Visitación Rivera Colón trató de subsanar el defecto en cuestión sometiendo al registrador cierta prueba documental. La parte pertinente de la nota del registrador lee así:

"Denegada la subsanación del defecto relacionado en el documento o solicitud que precede, con vista de cuatro documentos que se acompañan como complementarios, por los siguientes fundamentos: 1°. que ninguno de los documentos aportados prueba la fecha de adquisición original del inmueble; 2°. que ninguno de dichos documentos prueba de manera directa el estado civil de Aquilino Díaz cuando adquirió el inmueble originalmente, pues a lo sumo, probarían por inferencia, el estado civil de dicho vendedor en la fecha de la redención de la finca y 3°. que el registrador carece de autoridad, para, a la luz de prueba documental, llegar a conclusiones que no resultan de una manera directa de los documentos referidos . . ."

Esta prueba, dice el recurrente, indica:

"A.—El nacimiento de Josefa Díaz Rodríguez, hija de don Aquilino Díaz y doña Petronila Rodríguez, ocurrido el 7 de mayo de 1865.

"B.—La defunción de doña Petronila Rodríguez, el 4 de julio de 1917.

"C.—La defunción de Aquilino Díaz ocurrida el 19 de junio de 1927.

"D.—Que no ha podido encontrarse en el archivo parroquial de Barranquitas el acta de matrimonio de don Aquilino Díaz y doña Petronila Rodríguez."

El asiento de junio de 1918 no fué hecho por el mismo registrador de la propiedad que lo interpretó en la nota

ahora recurrida. El recurrente insiste en que la fecha de adquisición a que se hace referencia en el primer asiento fué la fecha en que el vendedor "adquirió" la finca en cuestión de El Pueblo de Puerto Rico, mas no la fecha en que la hubo originalmente según sostiene el registrador. Admite que si el primer asiento se refiere a la fecha original de adquisición, las otras cuestiones discutidas en su alegato son más o menos académicas.

El artículo 352 del Código Político (Estatutos de 1911, sección 3018) dispone:

"Toda parcela de bienes inmuebles que se ofreciere en pública subasta para el pago de contribuciones no satisfechas, y no se vendiere por falta de postura suficiente para cubrir todas las contribuciones, penalidades y costas que graven dicha propiedad, podrá comprarse por el colector o agente, en nombre de El Pueblo de Puerto Rico, en cualquiera subasta pública después de la primera. El colector o agente hará pública postura por la indicada propiedad por el importe de dichas contribuciones, penalidades y costas, y si no se hiciere mejor postura, librará, y hará que se inscriba en el registro de la propiedad del distrito, un certificado de compra a favor de El Pueblo de Puerto Rico, conteniendo la relación y la descripción de la propiedad que se prescribe en el artículo 347. Si el derecho de redención, que más adelante se dispone, no se ejerciere dentro del tiempo prescrito, dicho certificado, una vez inscrito en el registro de la propiedad del distrito en que radicare la propiedad constituirá título absoluto de dicha propiedad a favor de El Pueblo de Puerto Rico, libre de toda hipoteca, carga o cualquier otro gravamen. Dicho certificado será evidencia prima facie de los hechos en él inscritos en cualquiera controversia, procedimiento o pleito, que ataña o concierna a los derechos que el comprador, sus herederos o cesionarios, tuvieren a la propiedad por el mismo cedido. No se cargarán honorarios por los registradores de la propiedad por inscribir dicho certificado, ni por las copias que de ellos libraren. El dueño de dicha propiedad en la fecha de la venta por no haberse pagado las contribuciones, sus herederos o cesionarios, o cualquiera persona que tuviere derecho o interés en la misma, podrá redimirla dentro de un período de un año contado desde la fecha de emisión de dicho certificado, mediante el pago de la cantidad por la cual fué rematada la propiedad por El Pueblo de Puerto Rico, con intereses a razón del doce por ciento anual, desde la fecha de la venta, pudiendo requerir al

Tesorero de Puerto Rico para que haga anotar dicha redención en el registro de la propiedad contra el certificado de compra, mediante el pago, por la persona que la redimiere, al registrador, de un derecho de un dollar por dicho servicio, y dicha anotación surtirá el efecto de carta de pago y cancelación del certificado de compra, quedando sujeta la propiedad así redimida a toda carga y reclamación legal contra ella, que no fuere por contribuciones, en la misma amplitud y forma como si no se hubiere vendido dicha propiedad para el pago de contribuciones.''

Si la ley de 1915 hubiese dispuesto que El Pueblo de Puerto Rico efectuara una retroventa (*reconveyance*) en vez de conceder al deudor el privilegio de redimir, entonces habría más peso en la contención del recurrente de que Aquilino Díaz ''adquirió'' la finca de El Pueblo de Puerto Rico en junio de 1915, y que la mención de un defecto subsanable hecha en 1918 se refería a la fecha de tal adquisición. Véanse *Curtin* v. *Kingsbury*, 159 Pac. 830, 832; *Louis* v. *Tipton*, 222 Pac. 661, 662; *Grand Rapids Trust Co.* v. *Doctor*, 192 N. W. 641.

Sin embargo, El Pueblo de Puerto Rico, como dueño absoluto, tenía autoridad para conceder una redención en vez de una retroventa y esto fué lo que la Legislatura hizo en 1915. Aquilino Díaz redimió, pero no compró. Él no recibió ningún nuevo título, sino que se le restituyó el título que tenía con anterioridad a la venta efectuada para el cobro de las contribuciones. Cooley on Taxation, 2da. edición, pág. 542; Black on Tax Sales, 2da. edición pág. 436; *Jenks* v. *Wright*, 61 Pa. St. Rep. 410; *Steiner* v. *Coxe*, 4 Pa. St. Rep. 13; *Hernández* v. *Costa*, 16 D.P.R. 445; 61 Corpus Juris, pág. 1287; *Bente* v. *Sullivan*, 115 S. W. 350; *Sunderman Investment Co.* v. *Croighead*, 173 S. W. 653.

Por tanto, creemos que el registrador estaba en lo cierto al interpretar que el asiento anterior hecho por su predecesor en el cargo se refería a la fecha original de la adquisición y no a la fecha de la redención. Si el registrador que efectuó el asiento anterior hubiese tenido en mente especificar la fecha de la redención en vez de la fecha de la adquisición ori-

ginal, hubiera usado la palabra "redimió" en vez de la palabra "adquirió".

El hecho de que Díaz estuviera casado con Petronila Rodríguez desde 1865 a 1917, unido al hecho de que falleció a los 90 años, en 1927, no excluía la posibilidad de un matrimonio anterior ni la posibilidad, no importa cuán remota sea, de haber adquirido durante la existencia de tal matrimonio anterior. En su consecuencia, el registrador también estaba en lo cierto al resolver que la prueba sometídale no era suficiente para subsanar el defecto a que se hace referencia en el asiento anterior. Cualquier error que estuviese envuelto en cualquiera de los aspectos de la nota recurrida, no exigiría la revocación.

Parecerá superfluo decir que no nos confrontamos ahora con ninguna cuestión relativa a la necesidad o corrección de la referencia que se hizo a un defecto subsanable en el asiento anterior. La única cuestión sujeta a discusión en el presente recurso era la que acabamos de resolver, respecto a si el supuesto defecto fué subsanado por la prueba documental sometida al registrador. No debe entenderse que hemos pasado sobre ninguna otra cuestión.

*Debe confirmarse la nota recurrida.*