MEAGHER v. DUMAS.

</div>

TAXATION—TAX HOMESTEAD LANDS—ABANDONED LANDS.
  Where lands which have been bid in for the State at tax sales are shown by the examiner's report and certificate to be actually occupied by the owner of the original title, they are not subject to disposition as "abandoned" lands under sections 127–134 of the general tax law as amended (§§ 3949–3956, 1 Comp. Laws).

Error to Bay; Shepard, J. Submitted January 9, 1906. (Docket No. 30.) Decided April 30, 1906.

Ejectment by William J. Meagher against Henry Dumas and Sophia Dumas. There was judgment for plaintiff for a part only of the land claimed, and he brings error. Affirmed.

*Pierce & Kinnane,* for appellant.

*Haller & Haller* and *M. L. Courtright,* for appellees.

McALVAY, J. Plaintiff began ejectment against defendants in the circuit court for Bay county to obtain possession of lot 5, block 4, Johnson & Lewis' first addition to Bay City. Plaintiff claims title by virtue of a deed

from the State land commissioner, dated December 19, 1904, being, as stated in the deed, "lands reserved and withheld from homestead entry under the homestead right, pursuant to the provisions of section 131 of Act 206 of the Public Acts of 1893, as amended by Act 141 of the Public Acts of 1901, and said lands having been restored to market in manner provided by section 131 of Act 206 of the Public Acts of 1893, as so amended." Defendant Henry Dumas is the owner of the original title, and with Sophia, his wife, has owned and occupied the same as his homestead since 1872, first under a land contract, and later under deeds. The land has been assessed in two descriptions as the east 50 feet and the west 60 feet of said lot 5, block 4. The entire lot has been occupied continuously as one parcel, and has been inclosed as such for about 11 years. The house is situated partly on both of the descriptions. This lot, under the descriptions above given, had been sold to the State for more than five years prior to any action taken by the auditor general under the provisions of section 127, Act No. 206, Pub. Acts 1893. There was a total of unpaid taxes against the east 50 feet of $73.95, and against the west 60 feet of $65.77.

On March 4, 1904, an examiner certified his inspection of the property under the statute, showing the east 50 feet occupied by H. Dumas under warranty deed dated about 1875, giving the estimated value of the land $65 and the house $200, and the west 60 feet unoccupied, the value of the land estimated at $40. On May 7, 1904, the county clerk of Bay county certified an examination of the records and files of his office, and that he found no action pending to set aside any taxes against the land, or to remove the cloud occasioned by any of said taxes or by any sale thereof. On May 12th the auditor general certified that the land, as delinquent for taxes for more than five years, was sold or bid off to the State for one or more of said years, was not redeemed, and the time for redemption had expired. On the same date the auditor general and the commissioner of the State land office certified that

the foregoing steps had been taken as to lands included in the statement annexed (which included the land in controversy), and determined that said lands came within the provisions of section 127, Act No. 206, Pub. Acts 1893, as amended by Act No. 107 of the Public Acts of 1899, and found and determined "eighty sections of land included in this determination, being the descriptions entered on the preceding pages," which was the statement to which their certificate was attached. The auditor general deeded this land in controversy to the State September 24, 1904.

On October 8, 1904, the same officers, under section 131 of general tax law, as amended by Act No. 141, Pub. Acts 1901, withdrew said land from homestead entry. Notice of restoration to market, and sale, as provided by said section, was published by the land commissioner to take place December 8, 1904, and under this notice a sale was made and deed executed to plaintiff, under which he claims. From the report above mentioned of the examiner, Whitbeck, to the auditor general, it appeared that the east 50 feet of said lot was occupied by defendant, and the west 60 feet was not occupied. The court directed a verdict for defendants for the east 50 feet, for the reason that it could not be sold as abandoned land, and a verdict for plaintiff for the west 60 feet, certified as unoccupied, holding as to that portion the owner could not dispute the record.

Plaintiff asks this court to reverse the judgment in this case for the following reasons: (1) The court erred in not directing a verdict for plaintiff. (2) The court erred in charging the jury:

"So far as the occupied land is concerned, I charge you and direct the clerk to enter your verdict that the plaintiff shall recover so far as the west 60 feet of it is concerned, and that as to the land returned to the auditor general as occupied land that he cannot recover, and a judgment shall be for the owner of the land, and that will be your verdict."

Both parties assigned errors, and the bill of exceptions was settled at the request of both. Plaintiff sued out his

writ of error. Defendant has, as yet, taken no further steps in the case.

The consideration of this case involves an examination and construction of sections 127 and 131 of the general tax law as amended, relative to lands known as "State Tax Homestead Lands." This legislation (sections 127-134, inclusive, of the general tax laws) was first enacted in 1893. Act No. 206, Pub. Acts 1893. This act applied to "barren, swamp, or worthless lands *that have been abandoned by the owner,*" which had been delinquent for taxes and bid off to the State for a period of more than three years. By Act No. 154, Pub. Acts 1895, it was provided that "failure to pay the taxes or to redeem or purchase any lands" so sold, "shall be, in all cases where such lands *are not actually occupied,* prima facie evidence that such lands are *abandoned* by the owner." Section 3949, 1 Comp. Laws. Section 131 of the original act provided for the disposition of such lands to homesteaders only. Unimportant amendments were made to this section in 1899. Act No. 107, Pub. Acts 1899, amended sections 127, 128, 130, 131, and 133 of the general tax law as embodied in 1 Comp. Laws. The amendments to section 127 will be first considered.

The first paragraph provided that lands delinquent for taxes for any five years, sold and bid off to the State for one or more of said years and then so held, and no application made to pay, purchase, or redeem from said taxes, and no application made to set aside such taxes or remove cloud occasioned thereby, shall be deemed *abandoned* lands, unless such lands are actually occupied by the person having the record title thereto. The second paragraph is a material addition. It provides:

"Any lands delinquent for taxes for a period of five or more years, and said lands having been sold and bid in by the State and held by the State for the taxes of any of said years, and no application having been made to pay, redeem or purchase the same, and no suit pending to set aside said taxes or remove the cloud from the title occasioned

thereby, shall be subject to the provisions of this section."

The third paragraph provides:

" Whenever it shall appear by the records in the auditor general's office that any lands are delinquent for taxes for five years or more and that said lands have been bid off to the State one or more times by reason of such delinquent taxes, and that the time of redemption of such sale or sales has expired and that no application has been made to pay, to redeem or purchase the same, and it shall appear that no action is pending in the circuit court of the county where said lands are situated to set aside the taxes or remove the cloud on the title occasioned thereby, the title to the State shall be deemed absolute in and to said lands; and it shall be the duty of the auditor general and the commissioner of the State land office to cause an examination of such lands to be made as soon as practicable, to ascertain their value and *if abandoned.*"

The section further provides that, upon filing a certificate of said examination and a certificate of the county clerk with reference to proceedings to set aside the taxes or remove the cloud, the auditor general and commissioner shall determine what lands so examined come within the provisions of this section, and make a record thereof. This finding and determination must show, among other things: "*Fourth.* Whether said lands are *occupied or abandoned*"—and shall be deemed conclusive of the facts therein stated, unless suit is instituted to vacate the same within six months. The section further provides that the auditor general, within 90 days after such determination, shall deed such lands to the State, to be held by the land commissioner subject to the further provisions of the statute; that no suit shall be instituted to vacate, set aside, or annul said determination, unless instituted within six months thereafter. There are other provisions embodied in this section, not material to the case, relative to where, and the terms upon which, the suit may be instituted. Sections 128 and 130 refer to matters not material to this case. Section 131, which, as section 3953, 1 Comp. Laws, was very short, and provided that such lands should be

held subject to homestead entry only, was amended by Act No. 107, Pub. Acts 1899, as to the details of such homestead entries. It was amended further by Act No. 141, Pub. Acts 1901, to provide for other dispositions than for homestead entry, as follows:

"All such lands shall be held by the commissioner of the State land office subject to entry as homestead lands unless withheld and reserved in the manner following: The commissioner of the State land office and the auditor general, acting jointly, may reserve and withhold from entry under the homestead right such portion of the lands deeded by the auditor general to the State under section 127 * * * as, in their opinion, may not be advantageous to open for homestead, and they may withhold and reserve such land from entry for so long a time as in their opinion will best subserve the interests of the State. The said land commissioner and auditor general shall affix a minimum price upon all lands so reserved and withheld, or which may hereafter be reserved and withheld."

Further provision is made that all such lands shall be offered for sale by the land commissioner at prices to be fixed by him, but in no case for less than the minimum price above provided for, and such sale shall be made under the same rules and regulations as provided by Act No. 21, Laws of 1873. The balance of the section relates only to homestead lands.

It is first necessary to determine whether only abandoned and unoccupied lands were intended by the legislature to be set apart for homestead entry. It is conceded by plaintiff that this was so according to the terms of the statute as originally enacted; but it is claimed that by the amendment of 1899, by adding the second paragraph of section 127, all lands coming within the terms of the amendment above quoted, whether unoccupied or not, could be so set apart. If this is true, this paragraph, injected by this amendment, renders the first paragraph, declaring such lands under practically identical conditions nugatory and meaningless in declaring that they shall be deemed abandoned lands, "unless such lands are

actually occupied by the person having the record title thereto." It will be noted that the original provision of this statute that such lands should be *barren, swamp, or worthless* is eliminated, and the legislature has only re-- tained the provision relative to actual occupancy by the owner of the original title. It is the duty of this court to give force and effect, if possible, to a clearly expressed legislative intent. The examiner, by the provisions of this section as amended, is required to report whether the lands are *abandoned*. The finding and determination must be made as to all the lands within the provisions of this section which are eventually to be deeded by the auditor general to the State and to be held by the land commissioner. This section 127 has not been amended since 1899, and these lands were deeded to the State to be held by the land commissioner, subject to homestead en- try *only* under section 131 as it then provided. We think it was not the intention of the legislature to place lands already actually occupied upon the homestead lists, and hold that the section as amended did not include such lands.

These lands, as shown by the record, were held, treated, and described by the land commissioner as abandoned lands. The auditor general and the land commissioner found and determined that part of, this land in dispute was occupied by defendants holding by warranty deed, and had been so occupied by them since about 1875; the ex- aminer's report and certificate, referred to and made a part of such finding and determination, showing such fact. The record relied upon by plaintiff shows upon its face that the land was occupied land, and did not come within the provisions of the statute authorizing it to be placed upon the homestead list. This finding of fact does not support the determination of the officers. We hold the circuit judge was not in error in so ruling as to this east 50 feet of the lot, and instructing a verdict for de- fendants. After the land was deeded to the State, and held by the land commissioner subject to homestead entry,

it was withheld and reserved from such homestead entry right by virtue of section 131, as amended by Act No. 141, Pub. Acts 1901. The land commissioner afterwards took proceedings to restore this land, with other lands, to market, and a sale was made to plaintiff, under which he claims title.

Defendants not having sued out their writ of error, their objections and exceptions cannot be considered. ·

The judgment of the circuit court is affirmed.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.