DOWNER v. RICHARDSON.

TAXATION — STATE TAX HOMESTEAD LANDS — DEEDS — RECORD —
EFFECT OF DELAY.

Delay in executing and recording the deed from the auditor
general to the commissioner of the State land office, provided
for by section 127 of the general tax law (as amended by Act
No. 107, Pub. Acts 1899), does not affect the conclusiveness
of the determination that the lands are State tax homestead
lands. CARPENTER and MOORE, JJ., dissenting.

Error to Bay; Shepard, J. Submitted April 20, 1907.
(Docket No. 116.) Decided July 1, 1907.

Ejectment by Jane Downer against John Richardson
and Mary Richardson. There was judgment for defend-
ants on a verdict directed by the court, and plaintiff
brings error. Reversed.

*William A. Collins*, for appellant.

*George R. Fox* (*James Van Kleeck*, of counsel), for
appellees.

CARPENTER, J. This is an action of ejectment com-
menced April 18, 1905, to recover the possession of a cer-
tain lot situated in West Bay City. The defendants are
in possession and are tenants of the owner of the original
title. The plaintiff is the grantee in a deed issued by the
State under the State tax homestead law. All the pro-
ceedings resulting in the issuance of said deed were regu-
lar, save this: The deed by the auditor general to the
State of Michigan, provided for in section 127 of the tax
law (Act No. 107, Pub. Acts 1899), was not made, as re-
quired by said section, within 90 days after the determi-
nation that the land came under the provisions of said sec-
tion, and it was not recorded until more than six months
after said determination. The determination was made

May 12, 1904; the deed executed September 21, 1904, and recorded November 15, 1904. The testimony of the defendants proved that the land was occupied at the time the proceedings resulting in the foregoing determination were taken, though the examiner reported, and the auditor general and commissioner of the State land office found, that it was unoccupied. The trial court directed a verdict in favor of defendants. Plaintiff asks us to reverse the judgment entered on said verdict.

Defendants have in this suit successfully assailed the determination of the auditor general and the commissioner of the State land office more than six months after said determination was made, and this presents the important question for our consideration: Have they that right? Have they the right after the lapse of said six months to dispute the determination that the land was unoccupied? We have held that only unoccupied land was subject to the State tax homestead law. *Meagher* v. *Dumas*, 143 Mich. 639. We have also held that the determination that the land was unoccupied could not be attacked after the lapse of six months. *Jackson, etc., R. Co.* v. *Lumber Co.*, 146 Mich. 204; *Semer* v. *Auditor General*, 133 Mich. 569. In none of these latter cases, however, was the court called upon to consider, as it is in this case, whether the rule is changed by the delay in executing and recording the deed. The precise question to be decided, then, is this: Did the delay in executing and recording the deed affect the conclusiveness of the determination that the land was unoccupied? That depends upon the proper construction of the following portion of said section 127 of the general tax law (Act No. 107, Pub. Acts 1899):

"The determination of the auditor general and commissioner of the State land office in that regard shall be deemed to be conclusive as to the facts therein stated, unless suit is instituted to vacate the same within six months as hereinafter provided. Within ninety days after such determination the auditor general shall make a

transfer by deed of all lands so determined by the auditor general and said commissioner of the State land office to come within the provisions of this section to the State of Michigan as to an individual, as provided in section seventy-two of this act so far as said section is applicable. Said deed or deeds shall be delivered to the commissioner of the State land office, who, after having said deed or deeds recorded in the register of deeds' office, of the county where the lands are situated, shall file the same in his office. Upon the execution and delivery of said deed or deeds to the commissioner of the State land office, said commissioner shall hold said lands as State lands, subject to the provisions hereinafter contained. And no suit shall be instituted to vacate, set aside or annul the said determination of the said auditor general and the commissioner of the State land office made as aforesaid unless instituted within six months after the determination aforesaid. Any person desiring to file a bill or institute a suit to vacate the findings of the auditor general and commissioner of the State land office, as provided in this section, shall first pay to the auditor general all delinquent taxes returned to the auditor general on the lands in question, together with all interests, costs and charges, and shall purchase and pay for all bids and titles held by the State to such lands by paying therefor the amount bid by the State and all interest and legal charges thereon, as provided in section eighty-four of this act. * * * Any suit instituted for the purpose of setting aside the determination aforesaid may be commenced in the circuit court of the county of Ingham."

The statute says that the auditor general "within ninety days after such determination shall make transfer by deed." This language is explicit. The requirement that the commissioner shall at once place the deed upon record is almost equally explicit, for the statute says that on its delivery to him "he shall file the same in his office;" but this he is not to do until "after having said deed recorded in the office of the register of deeds in the county where the lands are situated." We have, then, a positive statutory requirement that the deed shall be executed within 90 days, and at once recorded. I think there is an intimate relation between this requirement and

the provision that the determination shall be conclusive unless assailed by suit within ·six months.   I think the purpose of the requirement is to notify the landowner that said determination has been made in order that he may have the opportunity of assailing it.   I also think that the provision that said determination shall be conclusive assumes that this notice has been given.   It is clear from the portion of the statute quoted in this opinion that the legislature intended to give the landowner an opportunity to attack the determination.   The language: "Any person desiring to file a bill or institute a suit to vacate the findings of the auditor general and commissioner of the State land office  *  *  *  shall first pay *  *  *  all delinquent taxes.  *  *  * ·Any suit instituted for the purpose of setting aside the determination aforesaid may be commenced in the circuit court of the county of Ingham "— was intended to give, and does give, the owner of the land an opportunity to prove in court that said finding was, as in this case, incorrect. There is no such opportunity unless the landowner is notified that the determination (which is conclusive unless assailed within six months) has been made; and therefore it is to be presumed that the legislature intended to make some provision (the adequacy of which it may determine) for notifying them.   What provision has it made ?   None whatever, unless it is to be found in the requirement under consideration.   If this requirement is observed, if the deed is executed within 90 days and promptly recorded, as provided by the law, it does furnish such notice—that is, it furnishes a means by which the owner may acquire notice—and I can conceive of no other purpose accomplished by its observance.   This reasoning convinces me of the correctness of the conclusion heretofore announced, viz., that the purpose of this requirement was to give the landowner notice of said determination, and it follows that, because this requirement was not observed, because this notice was not given, the determination was not conclusive.   The legislature did not intend that the deter-

mination should be conclusive in such a case. The statute, fairly construed, makes the determination conclusive after the lapse of six months, when, and only when, the required notice is given. As that notice was not given in the case at bar, defendant had a right to assail the determination by proving that the land in question was occupied.

It is suggested that, though the delay in executing and recording the deed prevents the determination becoming conclusive at the end of six months, it will nevertheless be conclusive three months after the deed is executed and recorded. According to that argument, the determination in the case at bar became conclusive, not November 12, 1904 (six months after it was made), but February 15, 1905 (nine months after it was made, and three months after the deed was recorded). I cannot approve this argument. The legislature has said that the determination shall be conclusive at the end of six months, if the statutory notice has been properly given; that is, if the deed is executed and recorded in due season. It has not said that it shall be conclusive after the lapse of nine months if notice is improperly given, and we cannot give the statute that construction.

It is suggested that our statement in *Jackson, etc., R. Co.* v. *Lumber Co.*, supra, that "the execution of the deed [by the auditor general] is a mere ministerial act to evidence the title," is opposed to this opinion. I think otherwise. That statement was not a necessary part of that decision, and is not authority denying the proposition affirmed in this opinion. That proposition was not involved in that case; was not considered, and consequently was not there decided.

My attention has been called to Act No. 84 of the Public Acts of 1903, which reads as follows:

"After the expiration of six months from and after the time when any deed made to the State under the provisions of section one hundred twenty-seven of Act two hundred six of the Public Acts of eighteen hundred ninety-three, being the general tax law, and acts amendatory

thereto, shall have been recorded in the office of the register of deeds for the county in which the land so deeded shall be situated, the title of the State in and to the same shall be deemed to be absolute and complete, and no suit or proceeding shall thereafter be instituted by any person claiming through the original or government title to set aside, vacate or annul the said deed or the title derived thereunder: *Provided,* That as to all lands heretofore deeded to the State under the provisions of said section one hundred twenty-seven of said act two hundred six of the Public Acts of eighteen hundred ninety-three, the title of the State thereto shall be deemed to be absolute and complete after a period of six months from the taking effect of this act, and no suit or proceeding shall thereafter be instituted by any person claiming through the original or government title to set aside, vacate or annul said deed or deeds or the title derived thereunder."

This act, if constitutional—and its constitutionality we do not determine—has no application to this case. The first part of the act does not apply, because this suit was instituted less than six months after the deed was recorded. The proviso does not apply, because the land in controversy had not, when said act was passed, been "deeded to the State under the provisions of said section 127." Section 127 is neither in terms nor by implication repealed by said Act No. 84, and it therefore continues to be the law which determines the rights of the parties to this case. *Lake Superior, etc., Iron Co.* v. *Auditor General,* 79 Mich. 351; *Regents of the University* v. *Auditor General,* 109 Mich. 134.

Plaintiff insists that the issue of occupancy should have been submitted to the jury. The trial court directed a verdict upon the assumption that the proof of occupancy was undisputed. Plaintiff now contends that this assumption was erroneous. He should have made this contention in the trial court. He did not make it. He there remained silent. It may fairly be inferred that the assumption was based on his silence. It is now too late to speak.

I think the judgment should be affirmed.

MOORE, J., concurred with CARPENTER, J.

MONTGOMERY, J.    Under section 127 of the tax law, the determination of the auditor general and commissioner of the State land office that the lands are vacant and unoccupied may be attacked only if the attack be made within six months after *such determination.*    As the determination does not vest title in the State if the precedent proceedings are jurisdictionally defective, this provision presupposes title in the State, and was intended to fix the time during which as a matter of grace those interested might be permitted to open up the case and disprove the facts found.    There doubtless exist in many cases equitable considerations which might induce a liberal construction of a statute granting this privilege; but I am not able to reach the conclusion that the date of this determination is by this statute fixed as the date of record.

It is suggested that the record is intended to act as notice to the original owner or the public, and that, when six months after determination is spoken of, six months after determination, followed by the execution and record of the deed, was meant.    A difficulty in placing this construction upon the statute is encountered in the language fixing the time for executing the deed as within "ninety days after such determination."    I think it does violence to this language to hold that the determination referred to is not complete until the 90 days have elapsed, and the deed is recorded.

I am constrained to hold that the judgment should be reversed.

MCALVAY, C. J., and GRANT, BLAIR, and HOOKER, JJ., concurred with MONTGOMERY, J.

OSTRANDER, J.    In view of the conclusion reached in the case of *Griffin* v. *Kennedy,* ante, 583, I concur with Mr. Justice MONTGOMERY in reversing the judgment.