### HARTMAN *v.* EDWARDS.

1. TAXATION—WITHDRAWAL FROM SALE OF STATE TAX LANDS— STATUTES.

   Amendment to statute providing for withdrawal from sale of lands bid off to State for taxes after they had become five years delinquent is not automatic in operation, but requires affirmative action by auditor general to withdraw lands from sale (Act No. 155, Pub. Acts 1927).

2. SAME—WHEN STATE TAX LANDS SUBJECT TO PURCHASE—STATUTES.

   Auditor general has authority to accept applications to purchase lands bid off to State for taxes at any time before proceeding for examination for classifying them as State tax homestead lands were commenced; "pending" being construed as "during" (Act No. 155, Pub. Acts 1927).

3. SAME—STATE TAX HOMESTEAD LANDS—LIMITATION OF ACTIONS.

   Determination of auditor general and director of conservation that lands bid off to State for taxes are proper to be classified as State tax homestead lands is conclusive unless suit is brought within six months to set it aside, if precedent proceedings are not jurisdictionally defective (1 Comp. Laws 1929, §§ 3520, 3724).

4. SAME—STATUTES.

Effect of statute making determination that lands bid off to State for taxes are proper to be classified as State tax homestead lands conclusive unless suit is brought within six months to set it aside applies to indirect as well as direct attack upon determination (1 Comp. Laws 1929, §§ 3520, 3724).

5. SAME—STATUTES OF REPOSE.

Statutes making determination that lands should be classified as State tax homestead lands conclusive unless suit is brought within six months to set it aside are statutes of repose (1 Comp. Laws 1929, §§ 3520, 3724).

6. SAME—STATE TAX HOMESTEAD LANDS.

Where application to purchase State tax lands was canceled by auditor general, cancellation acquiesced in, and money returned, and record showed no other application to purchase at time determination was made classifying said lands as State tax homestead lands, there was jurisdiction to so determine.

7. SAME—EXPIRATION OF REDEMPTION PERIOD.

Lands are subject to State tax homestead law if period of redemption has expired on one or more sales (1 Comp. Laws 1929, § 3520 et seq.; Act No. 155, Pub. Acts 1927).

8. SAME—STATE TAX HOMESTEAD LANDS.

Error in report and deed that proceedings determining that lands conveyed were State tax homestead lands were taken under certain statute, and making no reference to amendment thereto, held, inconsequential, where amendment made no change in jurisdiction and proceedings, and determination and deed were made in accordance with law (1 Comp. Laws 1929, § 3520 et seq.; Act No. 155, Pub. Acts .1927).

Appeal from Houghton; Stone (John G.), J. Submitted June 22, 1932. (Docket No. 158, Calendar No. 36,493.) Decided October 3, 1932.

Bill by Gus T. Hartman against Richard M. Edwards and others to quiet title to real estate. Cross-bill by Richard M. Edwards and others

against Oramel B. Fuller, auditor general, and others to set aside deeds to and from State. Bill dismissed. Decree for cross-plaintiffs. Defendant auditor general and another appeal. Reversed, and cross-bill dismissed.

*Paul W. Voorhies,* Attorney General, and *Hugh E. Wilson,* Assistant Attorney General, for appellants.

*Myron J. Sherwood,* for appellees.

FEAD, J. Plaintiff Hartman filed bill to quiet title to city lots purchased by him from the State under the tax homestead law, 1 Comp. Laws 1929, § 3520 *et seq.* Cross-plaintiffs Edwards owned an interest in the original title, and, on the claim that the proceedings to convey the property by the auditor general to the State and by the department of conservation to plaintiff were without jurisdiction and void, filed cross-bill making the auditor general and director of conservation parties. The court entered decree dismissing plaintiff's bill, setting aside the deed from the auditor general to the State and the deed from the director of conservation to plaintiff, ordered the lands returned to the records of the auditor general as State tax lands and gave cross-plaintiffs leave to purchase. The State officers have appealed.

The premises were held by the State as State tax lands for the taxes of 1924 and 1925, as State bid for 1926, and as delinquent for 1927 and 1928. In October, 1929, cross-plaintiffs, through their agent, Van Orden, whose agency, however, was undisclosed, made application to purchase the lands and paid the auditor general the required amount of $2,600.73. The auditor general accepted the application, made

proper book entries of sale to Van Orden, and executed appropriate tax deed, receipts, and certificates. He did not deliver them because on December 5th the attorney general advised him that, under Act No. 155, Pub. Acts 1927, he had no authority to sell lands for taxes after they had become five years delinquent. He destroyed the instruments, canceled the book entries, and sent check for the purchase price to Van Orden on December 9th, stating that the lands "have been withdrawn from sale under the provisions of Act No. 155, Pub. Acts 1927." December 12th, Van Orden acknowledged receipt of the check, pointed out that it did not include an excess amount he had remitted, and asked correction of the check and early return to him. Correction was made, and the money accepted by Van Orden without protest.

Before withdrawal, proceedings had been begun to classify the lots as State tax homestead lands. November 25th the proper county clerk made certificate of no suit pending. November 26th an examiner made report of nonoccupancy. December 14th the auditor general made certificate that the lands were delinquent for taxes, as provided by statute, and that no application had been made to pay, purchase, or redeem. On the same day the auditor general and director of conservation made determination, "under the provisions of section 127 of Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899," and made the report provided by statute, including in it the statement, not expressly required by law, that no application had been made to pay the taxes or to purchase or redeem the lands. On the same day the auditor general deeded the lands to the State. The deed was recorded January 11, 1930. June 25, 1930, the depart-

ment of conservation deeded them to plaintiff, and the deed was recorded June 27th.

This suit was begun November 20, 1930, and the answer and cross-bill filed February 17, 1931.

Cross-plaintiffs contend the proceedings to determine and convey the premises as tax homestead lands were void because application to purchase had been made before the proceedings were commenced. The State claims that Act No. 155, Pub. Acts 1927, divested the auditor general of authority to accept an application to purchase after it appeared upon his records that the taxes were five years delinquent; and that, on such delinquency, the lands were automatically withdrawn from sale.

Act No. 155, which was given immediate effect, introduced into the law the language in controversy here:

"Said lands shall be withdrawn from sale by the auditor general pending such examination and the determination hereinafter referred to."

The amendment is fairly susceptible of the construction given it by the State. But there is a combination of considerations affecting it which, in our opinion, renders another construction more reasonable.

The State's construction is not made imperative by the language of the act. "Pending" may mean "during the time intervening before; awaiting; until;" or "during." 48 C. J. p. 782.

Prior to the amendment, application to purchase had been accepted at any stage of the tax homestead proceedings, before execution of the deed, and the proceedings then dismissed. It seems that if, overnight, the legislature intended to change this long-established law and practice so radically as the

State contends, it would have used language clearly evidencing such intention.

The State's construction generally, if not always, would result in financial loss to the State, through sale of homestead lands at less than the amount of delinquent taxes, as occurred at bar. It would deprive municipalities of taxes justly due them and the State of moneys raised for general expenses, to the benefit of special State departmental purposes. It would violate the spirit of the tax law, which is to levy and collect taxes, not to appropriate lands, the homestead provisions being merely last resort remedies to be applied when collection of taxes by sale or otherwise fails.

Moreover, appropriate changes were not made in the statute by Act No. 155 to provide proper administration of the amendment as construed by the State.

The amendment was not automatic in operation although mandatory in terms. It required affirmative action by the auditor general to withdraw lands from sale. But it did not provide the evidence upon which he could withdraw nor outline his procedure in possible situations.

In addition to delinquency, it must appear that no action is pending in circuit court to set aside the taxes or remove the tax cloud on the title in order to subject lands to the act. A record of the pendency of suits is not required to be kept by the auditor general. He must obtain information elsewhere from which "it shall appear that no action is pending." A certificate of the county clerk is made the evidence to support the final determination. The statute does not provide the evidence of "no action" upon which the auditor general shall act in making an order of withdrawal. Nor does it

purport to give him authority to decide the fact of whether an action is pending. Consequently there is no method provided by which, under the State's construction of the amendment, the auditor general, with assurance of legality, either could withdraw lands from sale or accept an application to purchase after the beginning of five years' delinquency.

In the ordinary course of departmental routine, it is inevitable that a considerable time must elapse, as to some lands, between the moment of five years' delinquency and the examination. The situation as to the essentials of tax homestead lands may change during the period between delinquency and examination, by occupancy or abandonment of lands, suits begun or dismissed, or applications to pay, purchase or redeem made, rejected or withdrawn, so that at times the lands may, and at other times may not, be subject to the act. It does not seem reasonable that the legislature intended to provide a period of abatement during which the State could not accept taxes by means of sale, even upon lands which then were not subject to conversion into homestead lands and which might never be.

These untoward results are avoided if the amendment be read in connection with the context and the policy of the tax law, without regard to what is said to have been the real, though unexpressed, intention of the legislature. The section provides both the essentials and the machinery for converting tax lands into State tax homestead lands. By requiring action of the auditor general to withdraw lands from sale and by its position in the procedural part of the section, the amendment is tied to the mechanics of the conversion and would naturally come into operation when the proceedings for conversion are begun by the ordering of examination. We think

"pending" should be construed as "during," and that the auditor general had authority to accept applications to purchase at any time before proceedings for examination were commenced.

Are cross-plaintiffs barred from recovery by the six months' statute of limitations contained in section 127 of the tax law, 1 Comp. Laws 1929, § 3520, and in section 3724?

Under section 127, the determination of the auditor general and director of conservation that lands are proper to be classified as State tax homestead lands is conclusive unless suit is brought within six months to set it aside, if the precedent proceedings are not jurisdictionally defective. *Downer* v. *Richardson,* 148 Mich. 596; *Griffin* v. *Kennedy,* 148 Mich. 583; *Jackson, etc., R. Co.* v. *Solomon Lumber Co.,* 146 Mich. 204; *Semer* v. *Auditor General,* 133 Mich. 569; *Beuthien* v. *Dillon,* 160 Mich. 396; *Price* v. *Stark,* 259 Mich. 407. The effect of the statute is not to be defeated by the form of action, but it applies to an indirect as well as a direct attack upon the determination. *Jackson, etc., R. Co.* v. *Solomon Lumber Co., supra.*

Under section 3724 it is held that a deed to the State, fair on its face, is conclusive of the title after six months, although it was executed by mistake and contrary to a finding that the premises were occupied (*Darrow* v. *Railway Co.,* 188 Mich. 664), and although nonoccupancy is a requisite to classification as tax homestead lands. *Meagher* v. *Dumas,* 143 Mich. 639.

These acts are statutes of repose and are to be so applied. In fact, because absolute title to the lands is vested in the State on State bid and expiration of the period of redemption (*Griffin* v. *Kennedy, supra*), section 127 provides a period for attacking the determination by way of grace rather than by

the divesting of right or title through lapse of time. *Downer* v. *Richardson, supra,* 602.

There is no claim that the tax proceedings are not valid. The questions at bar are confined strictly to the homestead proceedings.

The principal complaint made of the proceedings for determination is with respect of the application to purchase, the cancellation of which is claimed to have been unlawful. The statute makes the records of the auditor general the evidence of want of application, as a basis for the determination. At the time the determination was made, the application of cross-plaintiffs' agent had been canceled, the money returned, and, apparently, he had acquiesced in the withdrawal from sale. Consequently, the record showed no application to purchase at the time of determination and there was jurisdiction to proceed.

Had cross-plaintiffs or their agent then made claim that the record was incorrect and that the application to purchase was valid and in force, the auditor general and director of conservation, under their powers and duties to determine "what lands so examined come within the provisions of this section," could have passed upon the claim. Had the ruling been adverse to cross-plaintiffs, they would have been required to bring suit within six months to set aside the determination. By inaction, they can gain no greater rights than if they had asserted their claims seasonably. They cannot claim ignorance of reason for rejecting their application (if, indeed, that would aid them), because the auditor general notified their agent of the authority for his action.

Cross-plaintiffs further contend that there was no jurisdiction to make the determination because the period of redemption from the 1926 taxes had not

expired. The contention contended for would practically nullify the statute, because, if the State buys each year, there would always be an unexpired period of redemption. Upon the plain language and meaning of the statute the lands are subject to the act if the period of redemption has expired on one or more sales.

Complaint is made that the proceedings were recited in the report and deed to have been taken under section 127, Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899, no reference being made to Act No. 155, Pub. Acts 1927. The latter made no change in the jurisdiction or proceedings, and cross-plaintiffs were not injured by the oversight. The determination and the deed were made in accordance with law and the error was inconsequential.

Plaintiff has not appealed, the issue here being between cross-plaintiffs and the State. The decree will be reversed as to relief granted against the State, and cross-plaintiffs' cross-bill against the auditor general and director of conservation will be dismissed. Serious public questions being involved, no costs will be awarded.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.