SAPH *v.* AUDITOR GENERAL.

1. JUDGMENT—RES JUDICATA—TITLE.

An action of trespass on the case for damages to real estate in which it was incumbent upon the plaintiff therein to establish title or actual possession in himself was not *res judicata* of suit against auditor general and other officers by same plaintiff to remove a cloud upon title to real estate, which he claimed to be in himself.

2. ESTOPPEL—TAX LIENS—CONTRACT WITH CITY.

> Agreement between a plaintiff and city that he would pay all taxes due and to become due on an industrial property and erect a paper mill thereon and that city would return to him a sum equivalent to the city taxes to be paid by him *held*, insufficient to base an estoppel to city's claim in his subsequent suit to remove tax liens as cloud from his alleged title, where plaintiff never carried out his promises.

3. PARTIES—SUBSTITUTION OF PLAINTIFFS—FORMER ATTORNEY FOR DEFENDANT CITY.

> Substitution of party as plaintiff in suit to remove tax liens against an industrial waterfront property *held*, not to have constituted a gross impropriety on the part of such substituted party merely because at one time he had represented a defendant city in a previous hearing but had ceased to represent the city before becoming interested in the property and the litigation.

4. VENDOR AND PURCHASER—BONA FIDE PURCHASER FOR VALUE—RECORD.

> Record in suit to remove tax lien as cloud upon title to an industrial waterfront property *held*, to disclose that party substituted as plaintiff was not a bona fide purchaser thereof for value.

5. PARTIES—DIVESTITURE OF INTEREST—NOTICE TO COURT.

> Where it is shown that one who voluntarily divests himself of all interest in property involved in equity suit to remove tax liens as cloud upon title without notice to the court, an imposition upon the court is established, as an equity court would not let such a party continue litigation (3 Comp. Laws 1929, § 14010).

6. SAME—REAL PARTY IN INTEREST—JUDGMENT.

> A suit in equity may not be prosecuted further where the real party in interest is not before the court at the time of the decree (3 Comp. Laws 1929, § 14010).

7. JUDGMENT—SALE BASED ON DECREE WHICH NEVER BECAME EFFECTIVE.

> Where decree was not entered at time of sale of property in reliance thereon and decree never became effective because it was set aside upon remand after an appeal was timely taken after decree had been entered, the sale was void.

8. Taxation—Review of Assessments—Time.

Any action attacking an assessment, whether by the taxpayer, the taxing authorities or the State tax commission, must be seasonably taken (1 Comp. Laws 1929, § 3547).

9. Waters and Watercourses—Great Lakes—Boundary Line of Riparian Owners.

The boundary line of riparian owners along the Great Lakes is the water's edge, and not the meander line.

10. Taxation—Description According to Personal Boundaries.

Description of property assessed for taxes, according to personal boundaries was properly rejected by the auditor general as indefinite (1 Comp. Laws 1929, § 3413).

11. Same—Indefinite Descriptions—Reassessment.

Tax sales which included taxes for some years which had been assessed according to personal boundaries, hence too indefinite for correction, were subject to seasonable attack, as such taxes should have been reassessed upon the township at large and could not be reassessed upon the same property (1 Comp. Laws 1929, § 3488).

12. Same—Defective Reassessments—Tax Sale Decree—Redemption.

Defective reassessments were cured by tax sale decrees where no application was made to set aside such taxes until eight years after the expiration of the statutory period of redemption (1 Comp. Laws 1929, §§ 3462, 3488).

13. Same—Tax Sale—Delinquency of More Than 5 Years.

Title to premises became absolute in the State in May, 1931, where it had been delinquent for taxes for more than five years, had been sold and bid in by the State at the annual tax sales in 1925 and 1930, without any application to pay, redeem or purchase having been made, notwithstanding defective reassessments were included in such tax sales (1 Comp. Laws 1929, § 3520, as amended by Act No. 50, Pub. Acts 1931).

14. Same—Tax Delinquent Lands—Title in State—Moratorium Act.

Where title to lands delinquent for taxes for more than 5 years had become absolute in the State prior to enactment of moratorium act it was no longer tax delinquent within the purport of such act (1 Comp. Laws 1929, § 3520, as amended by Act No. 50, Pub. Acts 1931; Act No. 126, Pub. Acts 1933).

15. Mortgages—Absence of Title in Mortgagor.

Mortgage on property in which the State had absolute title by virtue of delinquency in payment of taxes for more than 5 years, tax sale decree and no application to pay, redeem or purchase and which was given before final decree determining that mortgagor and those claiming under him had no title, was not a valid lien on the property (1 Comp. Laws 1929, § 3520, as amended by Act No. 50, Pub. Acts 1931).

16. Costs—Public Question—Public Officer as Party.

No costs are allowed in suit to remove tax liens as a cloud on alleged title of plaintiff where auditor general was a party and a public question was involved (1 Comp. Laws 1929, § 3520, as amended by Act No. 50, Pub. Acts 1931; Act No. 126, Pub. Acts 1933).

Appeal from St. Clair; Spier (James E.), J., presiding. Submitted June 7, 1946. (Docket No. 20, Calendar No. 43,282.) Decided April 8, 1947.

Bill by Clarence A. Bradford against Vernon J. Brown, Auditor General, and others for cancellation of taxes. Cross bill by defendants against plaintiff for determination of ownership, correct description and amount of taxes. H. Payne Saph and Virginia A. Bradford substituted as parties plaintiff; Leo Coskey added as party plaintiff. Decree for defendant. Plaintiffs appeal. Affirmed.

*Henry W. Kleber* (*Clarence A. Bradford,* of counsel), for plaintiffs.

*Fred W. George, Jr.,* Prosecuting Attorney, for County Treasurer.

*Eugene F. Black,* for defendant City and School District.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons*

and *Peter E. Bradt,* Assistants Attorney General, for defendant Auditor General.

Butzel, J.    On May 1, 1939, Clarence A. Bradford as sole plaintiff, and through whom the other parties plaintiff later claim their interest in this litigation, filed a bill of complaint in the circuit court for the county of St. Clair in chancery seeking the cancellation of certain specified taxes or State bids thereon which, he claimed, might constitute a lien or cloud upon his title to the so-called Independent Sugar Company property, situate in the city of Marine City, Michigan.    He specifically requested that an order be entered directing that a particular description of the premises used for the year 1937 be placed upon the tax rolls at a valuation of $35,500 for the years 1931 to 1936, both inclusive, as determined by the State tax commission.    Answers and cross-bills were filed by the auditor general of the State of Michigan, the treasurer of St. Clair county, and the city of Marine City.    It is unnecessary to review the pleadings inasmuch as the issues involved, as sharply defined during the progress of the hearings, are set forth in our discussion.    The trial court entered a decree in this cause on September 26, 1941. It is referred to herein as the 1941 decree.    It was not enrolled, nor was notice of its entry given as required by Court Rule No. 57 (1933, as amended), until new counsel for Marine City caused such notice to be given September 25, 1945.    Thus, after a lapse of four years less one day from the entry of the decree in 1941, the county clerk gave notice to the attorney general, the prosecuting attorney, and the attorney of record of Marine City, that a decree had been entered in favor of plaintiff.    On September 26, 1945, defendant Marine City filed a claim of appeal.    On December 4, 1945, this Court entered

two orders in the cause: the first, on motion of appellant city of Marine City for amendment of the transcript and for the taking of additional testimony under Court Rule No. 72 (1945), and to add the school district of the city of Marine City as a party, remanded the case to the circuit court for the county of St. Clair, and authorized the trial court to hear and determine the motion, and if the trial judge determined that further testimony should be taken or the record should be amplified he should proceed accordingly; and the supplemented record, so far as material, was to be made a part of the record on appeal; provided, however, that the foregoing order and the appeal then pending in this Court were to be considered and held without prejudice to the right of the trial court on motion of defendant Marine City to grant *sua sponte* a complete rehearing of the cause. The second order denied plaintiff's motion to dismiss and called attention to Court Rule No. 57 (1945). Shortly thereafter the lower court entered an order adding the school district as a party defendant, and H. Payne Saph and Virginia A. Bradford as parties plaintiff. Another order was entered permitting Leo A. Coskey, a mortgagee, to intervene as an additional party plaintiff. Pursuant to the lower court's order, additional testimony was taken on the basis of which a second decree, referred to herein as the 1946 decree, was entered in this cause, setting aside the 1941 decree and dismissing the bill of complaint. Plaintiffs and appellants appeal from this later decree.

Clarence A. Bradford acquired title to the property involved herein in July, 1929. It consists of approximately 18 acres of land just inside the southerly limits of Marine City, Michigan, and has a frontage on the St. Clair river of almost 1,000 feet, approximately half of which is used for dock facili-

ties. The property is divided into two parcels by State highway M-29, also known as Parker street. The river side parcel contains about 10 acres of land on which stand three brick buildings which were used by the Independent Sugar Company until that company went into bankruptcy about 1922 or 1923. The largest building on the premises is some 240 feet long and 56 feet wide, half of which is three, and half five, stories high. Another building is approximately 56 by 46 feet, with a wing 56 by 42 feet, two stories high; there is also another building of smaller dimensions.

The record discloses that since 1918 the State of Michigan has collected from this property only a portion of the taxes of 1924, the taxes of 1929 and 1930, and the sum of $1,500 to apply on the taxes of 1927. As the result of the use of erroneous and indefinite descriptions by the local assessors, taxes for the years 1919, 1920, 1921, 1923, 1925, 1926, 1928, and 1932 were rejected by the auditor general. In 1919 this property was assessed at $240,000; 1920, 1921 and 1922 at $300,000; 1923 and 1925 at $225,000; 1926 at $80,000; 1927, 1928 and 1930 at $500; 1931 at $50,000; 1932 at $30,000; and in 1937 at $35,500, as determined by the State tax commission. Tax sales of the property were had in 1922, 1925, 1929, 1930, and 1938. The sales of 1922, 1929 and 1938 were cancelled by the auditor general and no claim appears to have been made by any of the parties litigant with reference to those sales. The effect of the tax sales of 1925 and 1930 is at issue. The taxes of 1922, including the rejected and reassessed taxes of 1920, were sold to the State at the 1925 tax sale and not redeemed; and the taxes of 1927, including the rejected and reassessed taxes of 1919, 1921, 1923, and 1925 were sold to the State at the 1930 tax sale and not redeemed.

In 1931 suit was begun by the auditor general in the St. Clair circuit court in chancery to restrain Clarence A. Bradford from removing machinery and materials from these tax-delinquent premises. The trial court found that the State was the owner of the property subject to the provisions of the general tax law and decreed that the State had a lien on the real estate, including the machinery and materials for the unpaid taxes for the years 1922, 1926, 1927 and 1928. This decree was entered six months after the time when it is now claimed that the State had become the absolute owner of the premises. After the signing of a stipulation whereby Bradford was permitted to remove the machinery and other property from the premises upon the payment of $1,000 to apply on the 1927 taxes (on which an additional $500 was subsequently paid), Bradford's appeal from the 1931 decree was dropped. The entire record of Auditor General v. Bradford is attached as an exhibit to the record in *Bradford* v. *Goldman,* 290 Mich. 338, submitted to this Court during the June term, 1939.

In *Bradford* v. *Goldman, supra,* Clarence A. Bradford sought to recover damages allegedly sustained by him as the result of Goldman's removal of fixtures from the buildings on these same premises. It was held therein that Bradford had failed to establish title in himself; and this Court cited *Alcona Board of Supervisors* v. *Auditor General,* 138 Mich. 491, in support of the contention that title to the premises had vested in the State.

At the conclusion of plaintiff's testimony at the first hearing, counsel for Marine City moved the lower court to dismiss plaintiff's bill of complaint on the ground that this Court's decision in *Bradford* v. *Goldman, supra,* established absolute title in the State of Michigan. The motion was denied without

prejudice to renewal at the close of the case, but was never renewed. The lower court held that the prior litigation was not *res judicata* of the issues involved, and went on to hold the 1938 tax sale void on the ground that the original assessments and taxes based thereon prior to 1931 were in violation of article 10, § 7, of the 1908 Constitution of the State of Michigan, which provides that assessments "shall be on property at its cash value." On September 26, 1941, the lower court entered a decree which voided the 1938 tax sale; removed other taxes assessed prior to 1938 and cancelled them; determined the correct description of the property; found the correct valuation of the property to be $35,500, as determined by the State tax commission; computed taxes due to be in the amount of $9,817.44; and ordered that payment of said sum within 30 days should be payment in full for all taxes up to and including the year 1938 with the provision that nonpayment would subject the property to tax sale in May, 1942.

The taxes found due by the lower court in the 1941 decree were not paid and were sold to the State at the 1942 tax sale, and were not redeemed. Within 60 days of the expiration of the redemption period, the premises, as described in the 1941 decree, were conveyed to the State by the auditor general. Subsequently, the State land office board, which is not a party to this litigation, sold the premises in February, 1944, which sale has given rise to an additional controversy, presently before this Court in a companion case under the title of *McLouth* v. *State Land Office Board, post,* 212.

Testimony at the second hearing disclosed that eight and one half months prior to the entry of the 1941 decree, Clarence A. Bradford and wife deeded the property involved herein to Alice M. Fox, Bradford's mother-in-law; that on February 12, 1941,

Alice M. Fox and Bradford mortgaged the premises to Andrew H. Neller and Leo A. Coskey; and that on February 5, 1944, Alice M. Fox deeded this same property to H. Payne Saph, attorney of record for defendant Marine City at the first hearing. It was disclosed that on February 25, 1944, Saph entered into a private agreement with Virginia Bradford, daughter of Clarence A. Bradford, in which it was recited that as part of the consideration of the deed from Alice M. Fox, Saph agreed to sell the property to Virginia Bradford for $11,000, in addition to which it was further agreed that any amount in excess of $24,000 which might be realized from the future sale of this property would be shared equally by the parties to the agreement.

Testimony at the second hearing disclosed an agreement executed by Clarence Bradford and Marine City in 1929, shortly after Bradford had acquired his interest in this property. By the terms thereof Bradford agreed to pay all taxes on the property due and unpaid up to May 1, 1930, and to pay all taxes assessed against the premises thereafter; in return, the city council agreed to return to Bradford a sum equivalent to all city taxes to be paid by Bradford. Bradford agreed to erect a paper mill on the property which, presumably, would employ local labor. The council submitted this proposal to the electorate of Marine City who approved it at the election of November, 1929. This proposal was never carried out by Bradford.

Finally, it was established that the description of the property contained in the quitclaim deed received by Bradford in 1929, and adopted by the trial court in its 1941 decree erroneously contained a small segment of a parcel belonging to Pierce and Hildegard McLouth (see *McLouth* v. *State Land Office Board,* hereinbefore referred to), whereas the

descriptions used in the tax sale decree of 1925 and 1930 did not contain the McLouth property.

With this additional testimony before it, the lower court found that the descriptions contained in the 1925 and 1930 tax sale decrees were proper; that, as the result of the series of conveyances detailed above, Clarence A. Bradford had divested himself of title to this property; that the 1929 agreement between Bradford and Marine City contained an express admission on the part of Bradford that the taxes prior to 1929 had been regularly assessed, which estopped him from coming into a court of equity and repudiating those taxes or assessments; that the present appearance of the attorney who had previously represented defendant Marine City in this cause as a party plaintiff claiming title through Bradford, left the court with misgivings as to the adequacy of the original hearing. The trial court held that *Bradford* v. *Goldman, supra,* was not *res judicata* of the validity of the assessments and taxes presently involved. The trial judge further found that the property had been delinquent for taxes for more than five years, had been sold and bid in by the State at the annual St. Clair county tax sales in 1925 and 1930, without any application to pay, redeem or purchase having been made; and that under section 127 of the general property tax law (1 Comp. Laws 1929, § 3520, as amended by Act No. 50, Pub. Acts 1931), title to the premises became absolute in the State of Michigan in May, 1931, prior to the commencement of the instant suit. Accordingly, the final decree of the lower court, entered on March 25, 1946, vacated the earlier decree of 1941 and dismissed the bill of complaint.

The trial judge was correct in holding that *Bradford* v. *Goldman, supra,* was not *res judicata* of the issues involved herein. That case was a suit in tres-

pass on the case for damages to real estate. It was incumbent upon plaintiff to establish title or actual possession in himself. He failed to show actual possession and was able to produce only a quitclaim deed without establishing title in his grantor. The statement in that case that title to the premises had vested in the State only decided that Bradford had not proven a title to the property.

This Court is not persuaded by the lower court's finding that Bradford's agreement and representations to the city of Marine City in 1929 are sufficient to ground an estoppel. Nor, despite the overtones noted in the lower court's second opinion, and the innuendo observed in the briefs submitted by new counsel for Marine City, do we find any gross impropriety on the part of plaintiff Saph, who represented defendant Marine City during the first hearing and who later became interested in the property and this litigation after he had ceased to represent that municipality. The record does show he is not a bona fide purchaser for value.

The testimony adduced at the second hearing, however, clearly establishes the fact that the trial court was imposed upon by plaintiff Bradford. The latter, during the pendency of this suit, had divested himself of all title and interest in the property involved herein without notice to the court. A court of equity will not permit a party who has voluntarily divested himself of any claim to continue litigating. *Brewer* v. *Dodge,* 28 Mich. 359. Under 3 Comp. Laws 1929, § 14010 (Stat. Ann. § 27.654), this suit could not be prosecuted further, the real party in interest not being before the court at the time of the decree. *Polish American Publishing Co. of Detroit* v. *Wojcik,* 280 Mich. 466; *Cyrowski* v. *Wojcik,* 280 Mich. 476; *Waters, for use of Commercial Casualty*

*Ins. Co.,* v. *Schultz,* 233 Mich. 143. The 1941 decree of the lower court never became effective, and the subsequent sale of the property in reliance upon that decree was void.

In this controversy there is no question but that title to the premises involved herein vested in the State of Michigan by virtue of delinquent taxes and tax sales. The real dispute is as to *when* the State acquired title. The trial court found that title vested in the State in May, 1931, as the result of the automatic operation of section 127 of the general property tax law. It is the contention of appellants that the State did not acquire title to this property until May, 1943, the date of expiration of the period of redemption from the tax sale of 1942, which, in turn, was based upon the 1941 decree entered in this cause. It should be observed that the position of the attorney general in this litigation is an anomalous one in that, although nominally the attorney for a party defendant, he has adopted plaintiffs' cause as his own and contends for the later date of vesting. This curious situation results from a sincere conviction on his part that the trial court's construction of section 127 may possibly raise doubts as to the title to many other parcels of property in Michigan.

Despite the flagrant discrepancies of valuation placed upon this property, there is no claim that either the tax authorities or the taxpayer at any time were foreclosed from seasonably seeking modification of such assessments from the State tax commission or its predecessor, the State board of tax commissioners. Any action attacking an assessment, as provided by 1 Comp. Laws 1929, § 3547 (Stat. Ann. § 7.210), whether by the taxpayer, the taxing authorities, or the State tax commission must

be seasonably taken. *Detroit Edison Co.* v. *City of Detroit,* 297 Mich. 583. This was not done in the instant case.

Testimony introduced at the second hearing, including a new survey, conducted in 1945, established the fact that the descriptions of this property used in the tax sale proceedings and decrees of 1925 and 1930 were substantially correct, and did not include the McLouth property, erroneously contained in the 1929 quitclaim deed description. A critical examination of this survey reveals that the monuments are at the present water line although the survey line is not. To foreclose any further litigation over this property, and because the issue was briefed by counsel, we reiterate that *Hilt* v. *Weber,* 252 Mich. 198 (71 A. L. R. 1238), states the law as to riparian rights in this jurisdiction.

The record discloses that the tax sale of 1925 was based on the assessment of 1922 and included the rejected and reassessed taxes of 1920. The State bid in and the property owner failed to redeem. The tax sale of 1930 was based on the assessment of 1927 and included the rejected and reassessed taxes of 1919, 1921, 1923 and 1925. Once again the State bid in and once again the property owner failed to redeem. The taxes of 1919, 1920 and 1921 were assessed upon property described according to personal boundaries and were correctly rejected by the auditor general as indefinite. See 1 Comp. Laws 1929, § 3413 (Stat. Ann. § 7.25). The taxes of 1922, including the rejected and reassessed 1920 taxes, were assessed against an entirely different description than that previously used. The taxes of 1923 were assessed together with the rejected and reassessed 1919 and 1921 taxes, were rejected by the auditor general, charged to the county June 30, 1925, for indefiniteness, and were reassessed in 1925. The

taxes of 1925, including the twice rejected taxes of 1919 and 1921 and the rejected taxes of 1923, were rejected by the auditor general, charged to the county June 30, 1927, because of erroneous description, and were reassessed in 1927. Out of this welter of rejections and reassessments one thing is clear and that is that both the 1925 and the 1930 tax sale decrees were subject to seasonable attack upon the ground that the delinquencies upon which they were based included taxes for at least one of the years, 1919, 1920 and 1921, during which years taxes were assessed upon property described according to personal boundaries, in consequence of which the taxes for those years should have been reassessed at large upon the taxable property of the township in accordance with the provisions of section 96 of the general property tax law (1 Comp. Laws 1929, § 3488 [Stat. Ann. § 7.149]), and could not properly be reassessed upon the same property because they were too indefinite for correction. *Auditor General* v. *Smith,* 125 Mich. 576; see *Auditor General* v. *Fleming,* 142 Mich. 12, 15. Nevertheless, no application having been instituted to set aside such taxes until 1939, eight years after the expiration of the statutory period of redemption from the 1930 tax sale, the defective reassessments were cured by the tax sale decrees of 1925 and 1930. See 1 Comp. Laws 1929, § 3462 (Stat. Ann. § 7.115). The attorney general contends that despite the curative effect of the 1925 and 1930 tax sale decrees, it would be inequitable for the State to take advantage of them in computing the number of years the premises were delinquent for taxes. With this we cannot agree. The defects of the years of reassessment once cured by these decrees, this property in May, 1931, the date of the expiration of the one-year statutory period of redemption from the tax sale of 1930, was tax delin-

quent for more than five years, had been bid off and sold to the State for the taxes of 1922 and 1927, with no application having been made to pay, purchase or redeem, and no action having been instituted to set aside the taxes or to remove the cloud from the title occasioned thereby.

Section 127 of the general property tax law, *supra,* as it existed in 1930 prior to amendment and subsequent repeal, provided that:

"Lands delinquent for taxes for any 5 years, where said lands have been sold and bid off to the State for the taxes of one or more of the said years, and then so held, and no application having been made to pay, purchase or redeem the said lands for said taxes and no action pending to set aside such taxes or to remove the cloud occasioned thereby, shall, within the meaning of this act, be deemed abandoned lands, unless such lands are actually occupied by the person having the record title thereto. Any lands delinquent for taxes for a period of 5 or more years, and said lands having been sold and bid in by the State and held by the State for the taxes of any of said years, and no application having been made to pay, redeem or purchase the same, and no suit pending to set aside said taxes or remove the cloud from the title occasioned thereby, shall be subject to the provisions of this section. Whenever it shall appear by the records in the auditor general's office that any lands are delinquent for taxes for 5 years or more and that said lands have been bid off to the State one or more times by reason of such delinquent taxes, and that the time of redemption of such sale or sales has expired and that no application has been made to pay, to redeem or purchase the same, and it shall appear that no action is pending in the circuit court of the county where said lands are situated to set aside the taxes or remove the cloud on the title occasioned thereby, the title to the State shall be deemed absolute in and to said

lands; and it shall be the duty of the auditor general and the director of conservation to cause an examination of such lands to be made as soon as practicable, to ascertain their value and if abandoned.''

It is the contention of defendant Marine City and the theory of the lower court's decision that the existence of the state of facts enumerated in section 127 of the general property tax law, automatically vests title to State tax homestead land in the State without a determination by the auditor general and the director of conservation and a conveyance by the auditor general to the State. The cases support this contention. In *Alcona Board of Supervisors* v. *Auditor General,* 138 Mich. 491, plaintiff petitioned the Court for a writ of mandamus to restrain the auditor general and the commissioner of the State land office from conveying to the State, under the provisions of the State tax homestead law, a large tract of land situate in Alcona county. In denying the writ, this Court observed (p. 499):

''As appears from the foregoing quotation of said section 127, lands possessing the aforesaid requisites are made subject to the provisions of said section, which provides further that, whenever the first four of these appear from the records of the auditor general's office (the other requirement is that *if it shall appear* that no action is pending, et cetera), the title of the State *to the land shall be deemed absolute.* The section is silent as to any determination in writing of these facts by the auditor general. Manifestly, he must, in a sense, determine them when the list is made. Said determination is not essential to make the title absolute in the State. If the statute makes any change in the title, it is by operation of law.''

In *Griffin* v. *Kennedy,* 148 Mich. 583, the constitutionality of section 127 was under attack with the

appellant urging that the determination required of the auditor general and the commissioner of the State land office necessitated a judicial act which must be performed by a court and not an administrative officer. Writing for the majority in that case, Mr. Justice CARPENTER stated:

"This argument rests, and must rest, upon the assumption that the former landowner has some rights which are affected by the determination. This assumption is unfounded. The former landowner has no such rights, because before the determination all his rights had been acquired by the State. After the expiration of his right to redeem from a regularly conducted sale at which the State has purchased—and that is the case with the land in question—it (the State) owns and can dispose of the land as it pleases; and this is true, though the former owner of the land continues in possession, for he is in possession without the right of possession. The determination in question was therefore a mere classification of lands owned by the State. It was in no sense a judicial act."

See, also, *Rathbun* v. *State of Michigan*, 284 Mich. 521, 539; *Bradford* v. *Goldman*, 290 Mich. 338, 344.

The attorney general directs our attention to *Hartman* v. *Edwards*, 260 Mich. 281, in which case an amendment to section 127 (Act No. 155, Pub. Acts 1927), providing for the withdrawal from sale of lands bid off to the State after such lands had been delinquent for five years, was before this Court for construction. It was held therein that the withdrawal required by the amendment was not automatic in operation but required affirmative action by the auditor general to withdraw such lands from sale. Although not determinative of the issues in the case at bar, admittedly, there is much language in the *Hartman Case* which we find difficult to recon-

cile with our holdings in *Alcona Board of Super-*
*visors* v. *Auditor General* and *Griffin* v. *Kennedy,*
*supra.* The attorney general contends that the prac-
tical effect of our holding in the *Hartman Case* was
that even where the "state of facts" existed which
made land subject to section 127, such land was still
subject to sale under section 84 as State tax land
until the auditor general had withdrawn it from
sale; and that under section 84, a purchaser was
required to serve on specified owners the notice of
reconveyance prescribed in sections 140, 141 of the tax
law (1 Comp. Laws 1929, §§ 3535, 3536 [Stat. Ann.
§ 7.198, 7.199]), and which such owners might still
redeem. Further examination of *Griffin* v. *Kennedy,*
*supra,* reveals, however, that the very argument was
presented to this Court in that case and rejected for
reasons set forth at pages 585–587 of the majority
opinion written by Mr. Justice CARPENTER, the only
distinction being that in the *Griffin Case* the refer-
ence was to Act No. 229, Pub. Acts 1897 which
added sections 140 and 141 to the tax law, and as
later amended appear as 1 Comp. Laws 1929,
§§ 3535, 3536. Finally, it is observed that even in
*Hartman* v. *Edwards, supra,* Mr. Justice FEAD writ-
ing for this Court stated at page 288:

"In fact, because absolute title to the lands is
vested in the State on State bid and expiration of
the period of redemption (*Griffin* v. *Kennedy,*
*supra*), section 127 provides a period for attacking
the determination by way of grace rather than by
the divesting of right or title through lapse of
time."

It is our conclusion, therefore, that the trial court
having properly determined that this property had
been delinquent for taxes for more than five years
and had been sold and bid in by the State at the an-
nual tax sales in 1925 and 1930, without any applica-

tion to pay, redeem or purchase having been made, correctly held that under section 127 of the general property tax law, title to the premises became absolute in the State of Michigan in May, 1931.

Finally, appellants urge that the Moore-Holbeck moratorium act (Act No. 126, Pub. Acts 1933)* vacated the 1925 and 1930 tax sale proceedings. Section 2 of that act directed the auditor general to return to the county treasurer in a special roll all general and special assessment real estate taxes returned to the State as delinquent, including all rejected taxes, for the year 1931 and prior years "not heretofore cancelled, paid, sold or redeemed." Under the auditor general's construction of this act, he returned:

1. All rejected taxes,
2. All delinquent taxes of the specified years,
3. All State bids, and
4. All State tax land, including that which, as in the instant case, was subject to section 127, but had not been examined, determined to come within this section, and conveyed to the State.

The property involved herein, however, had been sold to the State at the annual tax sales of 1925 and 1930, and, as the result of the years of delinquency and the taxpayer's failure to make any application to pay, redeem or purchase, had, under section 127, become absolute in the State. Once title had vested in the State, with five years' delinquency, this property was no longer tax delinquent within the purport of the Moore-Holbeck act which was enacted two years thereafter. In neither *Fahrney* v. *Stack,* 265 Mich. 657, nor *Kage* v. *Gordon Oil Co.,* 306 Mich.

---

* See Comp. Laws Supp. 1940, § 3551-4 *et seq.* Stat. Ann. § 7.231 *et seq.*—REPORTER.

619, cited by appellants, was the property involved tax delinquent for five years at the time the Moore-Holbeck act took effect, which was the situation in the case at bar.

The attorney general's grave concern in this litigation has been that, if lands not officially determined to be subject to section 127, and not conveyed to the State thereunder, became vested in the State by virtue of the "state of facts" enumerated in that section and were not returned to a delinquent status by the Moore-Holbeck act, thousands of parcels of land throughout the State upon which all taxes have been paid under the Moore-Holbeck act as construed by the auditor general actually belong to the State as State homestead tax lands, because prior to the passage of the Moore-Holbeck act, the "state of facts" existed which made them subject to section 127. We do not share the attorney general's apprehension, for it is inconceivable to us that the State, after accepting payments from taxpayers and large consideration from purchasers, would attempt to repudiate its obligations arising from the change of position of those who had relied upon the auditor general's interpretation of the Moore-Holbeck act, and particularly so where the rights of innocent third parties had intervened. As a matter of fact Bradford never tendered proper payments under the Moore-Holbeck act, although an opportunity was given him to come under the act. It is further to be noted that section 127, having been repealed by Act No. 234, Pub. Acts 1941, this particular problem is rather well confined. The record in the instant case does not reveal any equities in any of the parties plaintiff. Coskey claimed an interest by virtue of a $1,500 mortgage on the property made before final decree in this case, which determined that Bradford and those claiming under him had no

title. Therefore they could not give a mortgage that would be a valid lien on the property.

The 1946 decree of the trial court is affirmed. Inasmuch as the auditor general is a party defendant and a public question is involved, no costs are allowed.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred with BUTZEL, J.

NORTH, J. I concur on ground plaintiffs' case is without equity.

DETHMERS, J., did not sit.